NATIONAL MOTORISTS ASSOCIATION, Plaintiff-
Appellant,†

v.

OFFICE OF the COMMISSIONER OF INSURANCE,
Defendant-Respondent.

Court of Appeals

*No. 02–0511. Submitted on briefs September 10, 2002.—Decided
November 14, 2002.*

2002 WI App 308

(Also reported in 655 N.W.2d 179.)

† Petition to review denied 1-21-03.

240

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Rex R. Anderegg* of *Anderegg & Mutschler, LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. VERGERONT, P.J. The National Motorist Association appeals the circuit court order affirming the decision of the Office of the Commissioner of Insurance that the association must cease and desist from marketing and servicing its Pre-Paid Traffic Ticket Program in Wisconsin until it obtains a certificate of authority pursuant to WIS. STAT. §§ 601.04(2) and 610.11 (1999–2000).[1] The association (NMA) contends

---

[1] WISCONSIN STAT. § 601.04(2) provides:

> (2) REQUIREMENT OF LICENSE. No insurer or plan subject to this section may transact insurance business in this state without having in effect a certificate of authority.

WISCONSIN STAT. § 610.11 provides:

> **Qualified insurers.** No person may do an insurance business as defined in s. 618.02(2) on the person's own account in this state, either in person, or through agents or brokers, or through the mail or any other method of communication, except:

> (1) An insurer authorized to do business in this state, within the limits of its certificate of authority; or . . . .

246

that its program (PTT program) is a service provided to its members, not insurance, and it is not doing an insurance business in Wisconsin. NMA also argues that even if the PTT program is insurance, the Office of the Commissioner of Insurance (OCI) acted arbitrarily and capriciously in deciding not to exempt the program from regulation. Finally, NMA raises constitutional challenges of vagueness, overbreadth, and violation of equal protection.

¶ 2. Giving great weight deference to OCI's construction and application of the statutes it administers, we hold that its conclusions that the PTT program is insurance and NMA is doing an insurance business in Wisconsin are reasonable. We also hold that OCI's decision not to exempt the PTT program from regulation is not arbitrary or capricious. Finally, we hold that NMA's constitutional challenges are without merit. Accordingly, we affirm.

## BACKGROUND

¶ 3. NMA is a for-profit Wisconsin corporation that has operated in Wisconsin since 1982, with its place of business located in Waunakee, Wisconsin. It is a membership organization established to represent the rights and interests of North American motorists; it currently has 6,500 members nationwide, with approximately 200 residing in Wisconsin. The annual membership fee is $29.

¶ 4. In May 2000, NMA sent a mailing to all of its members, including its Wisconsin members, offering the PTT program as a new product. Under this pro-

All references to the Wisconsin statutes are to the 1999–2000 version unless otherwise noted.

gram, a subscriber pays an additional monthly fee of $5 for each $100 of "fine protection" up to a maximum of $1,000. If a subscriber receives a traffic ticket, the subscriber mails to NMA a copy of the traffic ticket and a receipt from the clerk of courts showing the amount paid by the subscriber. NMA then reimburses the subscriber up to the face amount of the contract for each ticket.

¶ 5. NMA sent all mailings for the PTT program from its Waunakee office, and processed all claims and mailed all reimbursement checks from that office. All money received from subscribers for the program was deposited in a Wisconsin financial institution.

¶ 6. As of December 2000, the PTT program had 28 subscribers. Between May 1, 2000 through November 9, 2000, NMA collected total payments of $1,887.50 from subscribers and paid a total of $623 in traffic ticket reimbursements. One Wisconsin resident applied for the PTT program, but NMA declined coverage because of this pending action.

¶ 7. After correspondence between OCI and NMA, OCI concluded that the PTT program was insurance and that NMA was not authorized to solicit insurance business in Wisconsin or any other state. On August 30, 2000, OCI issued an order directing NMA to cease conducting the PTT program in Wisconsin unless it obtained a certificate of authority authorizing it to conduct an insurance business in Wisconsin. NMA sought review of OCI's decision under WIS. STAT. § 601.62, and a hearing was held before an administrative law judge. The ALJ concluded that the PTT program was insurance because it was a promise by NMA to pay another for a specified loss—a traffic fine—in return for premiums paid. The ALJ also concluded that in its marketing and service of contracts under the PTT

248

program, NMA was doing an insurance business as defined in Wɪs. Stat. § 618.02(2), in violation of Wɪs. Stat. §§ 601.04(2) and 610.11. The ALJ modified OCI's order to make clear that "even with no Wisconsin policyholders of the PTT program, NMA must still cease all 'insurance business activities' with respect to the marketing and servicing of the [PTT program] unless and until NMA becomes a Wisconsin licensed insurer." Pursuant to Wɪs. Stat. § 227.46(3)(a), the ALJ's decision was the final decision of OCI, and we will therefore refer to it as "OCI's decision."

¶ 8. NMA petitioned the circuit court for judicial review of OCI's decision, and the circuit court affirmed.

## DISCUSSION

*Construction of Statute—"Insurance" and "Doing Insurance Business"*

¶ 9. We address first NMA's contentions that the PTT program is not insurance and NMA is not doing an insurance business. Wɪsᴄᴏɴsɪɴ Stat. § 610.11 provides that "no person may do an insurance business as defined in s. 618.02(2) . . . in this state . . ., except: (1) An insurer authorized to do business in this state, within the limits of its certificate of authority . . . ." Similarly, Wɪs. Stat. § 601.04(2) prohibits any insurer incorporated or organized under the laws of this state, with certain exceptions, from "transact[ing] insurance business in this state without having in effect a certificate of authority." Section 601.04(2).[2]

---

[2] Certificates of authority are issued by the commissioner of insurance "if the commissioner is satisfied that [the insurer or plan] has met all requirements of law and that its methods and practices and the character and value of its assets will ad-

¶ 10. Whether the PTT program is insurance and whether NMA is doing an insurance business present questions of statutory construction, issues of law, which we review de novo. However, we may give varying degrees of deference to an agency's interpretation of a statute that it is charged with administering. *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 761, 569 N.W.2d 726 (Ct. App. 1997). We conclude it is appropriate to give great weight deference to OCI's interpretation and application of the statutes involved in determining whether the PTT program is insurance and whether NMA is doing an insurance business in Wisconsin.

¶ 11. Great weight deference is appropriate when: (1) the agency is charged with administration of the statute being interpreted; (2) the agency's interpretation is one of long standing; (3) the agency employed its expertise or specialized knowledge in arriving at its interpretation; and (4) its interpretation will provide uniformity and consistency in the application of the statute. *Id.* at 761. It is not necessary that the agency has previously ruled on the application of the statute to a factual situation similar to the one presented if the agency has extensive experience in administering the

---

equately safeguard the interests of its insureds and the public in this state." WIS. STAT. § 601.04(3).

"Insurer" is defined in WIS. STAT. § 600.03(27) as:

> **(27)** . . . means any person or association of persons doing an insurance business as a principal, and includes, but is not limited to, fraternals, issuers of gift annuities, cooperative associations organized under s. 185.981, insurers operating under subch. I of ch. 616 and risk retention groups. It also includes any person purporting or intending to do an insurance business as a principal on his or her own account.

statutory scheme in a variety of situations. *Id.* at 764–65 and n.8. Great weight deference is also appropriate when an agency's interpretation and application of a statute are intertwined with value and policy determinations inherent in the agency's statutory decision-making function. *Id.* at 761.

¶ 12. Each of the above criteria is met in this case. OCI is charged by statute with administering and enforcing WIS. STAT. chs. 600 to 655. WIS. STAT. § 601.41(1). OCI has been administering these statutes and determining what constitutes insurance and what constitutes the business of insurance since at least 1933.[3] OCI employs its expertise in making these determinations, and its interpretation of the statutes it administers provides uniformity and consistency in the application of those statutes. In addition, what constitutes insurance and doing an insurance business is intertwined with value and policy judgments inherent in OCI's statutory decision-making function. Indeed, these questions lie at the core of the authority that the legislature has given OCI.

---

[3] WISCONSIN STAT. § 200.03 (1933) provides in part:

(2) SUPERVISION. He shall enforce the laws relating to insurance and shall exercise such supervision and control over insurance companies doing business in this state as the law requires; and to that end, he may make reasonable rules and regulations for their enforcement; and he may, by himself and his subordinates, conduct investigations, examinations and hearings, and take testimony.

(3) LICENSE COMPANIES. He shall examine insurance companies applying for a license to transact business, and if the affairs or conditions of any company fully meet the requirements of law, he shall issue his certificate licensing such company to do business, otherwise he shall deny the application.

¶ 13. Because great weight deference is appropriate, we will affirm OCI's construction and application of the statutes if they are reasonable—even if an alternative reading of the statutes is more reasonable. The burden of showing that the agency's interpretation is unreasonable is on the party seeking to overturn the agency's action; the agency does not have to justify its interpretation. *Barron Elec. Coop.*, 212 Wis. 2d. at 761 n.4.

¶ 14. We conclude that OCI's decision that the PTT program is insurance is a reasonable interpretation and application of that term as used in WIS. STAT. §§ 610.11 and 601.04(2). "Insurance" is not defined in the statute, but it has a commonly understood meaning of a contract that shifts the risk of loss in exchange for premiums. *See Hillegass v. Landwehr*, 176 Wis. 2d 76, 81, 499 N.W.2d 652 (1993). The definition OCI used is consistent with this—a promise by one party to pay another for a specified loss in return for premiums paid—and is therefore reasonable. OCI's application of this definition to the facts in this case is also reasonable, in that there is no dispute that NMA agreed to reimburse subscribers for loss in the form of traffic fines and forfeitures in exchange for monthly payments.

¶ 15. NMA offers several reasons why its PTT program is not insurance, but none of them shows that OCI's decision is unreasonable. First, NMA argues that it is a service organization, and the PTT program is not insurance but, rather, a service provided to NMA members as a means of furthering NMA's public policy to encourage the challenge of unfair traffic laws and tickets. NMA explains that if subscribers know that all or a significant portion of their traffic fines will be

reimbursed, they will be more inclined and more financially able to obtain professional assistance to contest a traffic citation. NMA may well be primarily a service organization, but OCI does not seek to regulate all NMA's activities—only the PTT program. NMA's purpose in offering that program does not alter the fact that it has chosen to accomplish its purpose by agreeing to reimburse subscribers for loss from traffic fines in. exchange for payments, thereby shifting the risk of that loss from subscribers to NMA.

¶ 16. Second, NMA argues that the risk of loss shifted to it is not significant, because subscribers, by complying with all traffic laws, have a high degree of control over whether or not they receive a traffic ticket. This is not a persuasive argument, since the same could be said for many other types of insurance: for example people have control over whether they drive carefully, but they buy motor vehicle liability insurance because they know they might be liable for negligently causing injury to another's person or property in spite of their efforts to be careful.

¶ 17. Third, NMA argues that under one author's definition of insurance, the PTT program is clearly not insurance because "there is no meaningful sharing of risk for fortuitous losses" over a large number of persons.[4] However, the use of other definitions of "in-

---

[4] NMA cites to Spencer Kimball, *Insurance and Public Policy* (University of Wisconsin Press, 1960):

> For purposes of this book, insurance may be defined as any formally organized scheme for the distribution of an adventitious economic loss over a large number of persons subject to the risk of such loss, with a view to replacing the uncertain risk of loss by a predictable cost.

surance" in other contexts does not show that the definition used by OCI is unreasonable.

¶ 18. We also conclude that OCI's decision that NMA is doing an insurance business in this state is a reasonable construction and application of WIS. STAT. § 610.11. "Doing an insurance business includes," among other things: (a) soliciting or making an insurance policy contract, (b) taking or receiving an application for insurance, (c) collecting or receiving an insurance premium, (d) issuing or delivering an insurance policy, (e) setting rates, and (f) settling claims. WIS. STAT. § 618.02(2). OCI determined that NMA performed all these activities in Wisconsin, and NMA does not dispute that. Therefore, OCI's conclusion that NMA was doing an insurance business in Wisconsin within the meaning of this statute is a reasonable one.

¶ 19. NMA argues, however, that other sections of the statute make it clear that OCI may regulate insurance business only when there is an insured in Wisconsin, and the PTT program has no Wisconsin subscribers at this time. OCI rejected this argument, concluding that there is no such restriction in the statutes. Because NMA has phrased this argument to implicate OCI's statutory authority, we will apply a de novo standard of review. *CenturyTel of Midwest-Kendall, Inc. v. PSC*, 2002 WI App 236, ¶ 25, 257 Wis. 2d 837, 653 N.W.2d 130. We conclude that OCI does have the statutory authority to regulate an entity that meets the requirements of "doing an insurance business" as defined in WIS. STAT. § 618.02(2) even if no Wisconsin resident is an insured.

¶ 20. First, there is no restriction to Wisconsin insureds in the plain language of WIS. STAT. §§ 610.11 or 618.02(2). Second, the section on which NMA relies, WIS. STAT. § 600.01(2), does not add this restriction, but instead provides additional categories of situations OCI may regulate. Section 600.01(1)(b) lists situations to which WIS. STAT. chs. 600 to 646 do not apply, and subsec. (2) provides exceptions to that—in other words, situations OCI may regulate:

> (2) EXCEPTIONS. (a) After a hearing, the commissioner may order an insurer to transfer the Wisconsin portion of the business under sub. (1)(b)3. or 4. to an authorized insurer if it is written by an unauthorized one, or may subject any insurance under sub. (1)(b)1. to 6. to chs. 600 to 646, on a finding that the foregoing conditions are not satisfied or that any circumstances require that the insurer be authorized to do business in this state or that the transactions be subject to chs. 600 to 646 in order to provide adequate protection to Wisconsin insureds and public. *Coverage of a resident of this state is the doing of an insurance business in this state and subjects the insurer to the jurisdiction of the commissioner and of the courts of this state.*

Section 600.01(2) (emphasis added). Read in context, it is plain that the italicized language, on which NMA relies, does not limit the definition of "doing an insurance business" in § 618.02(2) to "coverage of a resident of this state." Instead, the language identifies a circumstance in which activities not subject to OCI regulation under § 600.01(1)(b) are nonetheless subject to OCI regulation.

*Arbitrary and Capricious Challenge*

¶ 21. NMA contends that, even if the PTT program is insurance, OCI had the authority to exempt the

255

PTT program from regulation, and it acted arbitrarily and capriciously by refusing to do so. NMA asserts that OCI deviated from its prior practice without an adequate reason, because it has exempted prepaid legal services plans due to their limited scope, and that same rationale applies to the PTT program. NMA also contends there is no rational basis for regulating a program with so few subscribers and so little potential for harm.

¶ 22. We review an agency's discretionary decisions under WIS. STAT. § 227.57(8), which provides:

> **(8)** The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitutional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.

¶ 23. With respect to prepaid legal services plans, OCI has promulgated a rule exempting certain "legal expense insurance plans" from regulation and limiting the regulation of other legal expense insurance plans. WIS. ADMIN. CODE § INS 22.01(2). This rule is based on the finding that:

> certain plans of legal expense coverage, although they may constitute insurance plans, do not require regulation by the commissioner of insurance. The conduct of the lawyers is regulated by the state supreme court and, given the minimal coverage aspects of these plans, they do not require regulation by the commissioner. All

other forms of legal expense insurance are subject to full insurance regulation.

WIS. ADMIN. CODE § INS 22.01(1).[5]

¶ 24. We do not agree that the rule regarding prepaid legal services establishes a "prior agency practice." Rather, it is one occasion on which OCI has exercised its rule-making authority under WIS. STAT. § 600.01(1)(b)5, which provides:

> (b) Unless otherwise expressly provided, chs. 600 to 646 do not apply to:
>
> . . . .
>
> 5. Other business specified in rules promulgated by the commissioner on a finding that the transaction of such business in this state does not require regulation for the protection of the interests of Wisconsin insureds or public or for which it would be impracticable to require compliance with chs. 600 to 646, when necessary expenses and efforts are compared with the possible benefits.

We also do not agree with NMA that § 600.01(1)(b)5 gives OCI the authority to exempt it in the absence of a rule: by its plain terms, this section exempts only those businesses that OCI has specified in rules it has promulgated, based upon the requisite findings.[6]

---

[5] Among the requirements that legal expense plans must meet to be subject to limited regulation are that they provide only limited and specified types of legal services and they charge no more than $200 for one year of coverage. WIS. ADMIN. CODE § INS 22.03.

[6] Before the ALJ, NMA argued that it did not believe a separate administrative rule was required under WIS. STAT. § 600.01(1)(b)5 for the relief NMA sought.

¶ 25. In the absence of a rule promulgated under WIS. STAT § 600.01(1)(b)5, OCI does have the authority to exempt a person from statutory requirements under certain conditions. Section 600.13(1) provides:

> **Orders relaxing restrictions. (1)** ISSUANCE. After notice under sub. (2) and a hearing, the commissioner may issue an order freeing a person from any requirement of chs. 600 to 647 otherwise applicable to the person if the commissioner finds that the interests of residents, as defined in s. 647.01(11) [relating to continuing care contracts] insureds, creditors and the public will not be endangered thereby.

However, we may reverse OCI's discretionary decision not to exempt the PTT program from applicable statutory requirements only if it is arbitrary and capricious. *Wisconsin Prof'l Police Ass'n v. PSC,* 205 Wis. 2d 60, 73–74, 555 N.W.2d 179 (Ct. App. 1996). An agency decision is arbitrary and capricious if it lacks a rational basis. *Id.*

¶ 26. We conclude OCI does have a rational basis for not exempting the PTT program from the applicable statutory requirements. There is a rational basis for distinguishing between prepaid legal services plans and the PTT program because, as the findings in WIS. ADMIN. CODE § INS 22.01 state, the conduct of lawyers is regulated by the supreme court. It is reasonable for OCI to decide that supreme court regulation provides sufficient protection for the public such that OCI need not regulate, or need not fully regulate, those plans. There is no analogous regulation of the PTT program by a government entity other than OCI.

■

¶ 27. There is also a rational basis for OCI's rejection of NMA's argument that it should be exempt because of the small number of PTT program subscribers and small amount of revenue. As OCI's decision explains, with 6,500 NMA members and no limit on its future membership, and with NMA's figures that there are 50 million traffic tickets issued in this country each year, the current size of the program could grow considerably. Moreover, as OCI's decision also points out, there is no indication in the statute that the size of the insurance business is relevant to whether it should be regulated. Given that one of the purposes of WIS. STAT. chs. 600 to 655 is to ensure that policy holders, claimants, and insurers are treated fairly and equitably, WIS. STAT. § 601.01(2), it is reasonable for OCI to conclude that individuals who purchase insurance through a small program are just as entitled to protection as individuals who purchase protection through a large program.

¶ 28. Finally, OCI contends in its brief, and NMA appears to concede, that OCI has used WIS. STAT. § 600.13 to exempt only publicly-sponsored programs. In other words, another governmental entity is involved in regulating the program.[7] That is a rational

---

[7] For example, the record shows that on August 4, 1989, OCI issued an order exempting the Community Care for the Elderly Program (CCE) operated by the Community Care Organization of Milwaukee from regulation under WIS. STAT. § 600.13. Concluding that freeing CCE from OCI's regulation would not endanger the interests of residents, insureds, creditors, and the public, OCI considered five factors: (1) the limited number of potential enrollment in CCE (no more than three hundred), (2) the limited risk retained by OCI during CCE early years, (3) the existence of a backup plan for the subscrib-

basis for exempting programs under § 600.13, and the absence of analogous alternative regulation of the PTT program is a rational basis for not exempting the PTT program.

*Constitutional Challenges*

¶ 29. NMA claims the definition of "insurance" in Wis. Stat. § 600.03(25) is unconstitutionally vague, the definition of "insurance" OCI used is unconstitutionally overbroad, and OCI violated its right to equal protection by refusing to exempt the PTT program from regulation, while exempting prepaid legal services programs.[8] NMA raised these challenges before OCI, but OCI did not decide them, concluding it lacked authority to rule on the constitutionality of the statutes. The circuit court decided there was no merit to the constitutional challenges. We review these constitutional issues de novo. *County of Kenosha v. C&S Mgmt.,. Inc.*, 223 Wis. 2d 373, 393–94, 588 N.W.2d 236 (1999); *Schmeling v. Phelps*, 212 Wis. 2d 898, 905, 569 N.W.2d 784 (Ct. App. 1997).

ers in case CCE was discontinued, (4) the fact that CCE was also regulated by other federal and state regulators, and (5) the potential benefit to the public by providing elderly people with community-based long-term support services.

[8] Both the United States and Wisconsin Constitutions guarantee equal protection of the laws and due process of law, and the Wisconsin constitutional guarantees are essentially the same as those in the United States Constitution. *County of Kenosha v. C&S Mgmt., Inc.*, 223 Wis. 2d 373, 393, 588 N.W.2d 236 (1999).

¶ 30. A civil statute violates the right to due process on vagueness grounds when it is so vague and uncertain that it is impossible to execute it or to ascertain the legislature's intent with reasonable certainty. *Forest Home Dodge, Inc. v. Karns*, 29 Wis. 2d 78, 94, 138 N.W.2d 214 (1965). We presume statutes are constitutional and the party challenging the statute has the burden of persuading us otherwise. *Id.*

¶ 31. NMA argues that the definition of insurance in Wis. Stat. § 600.03(25) is vague and confusing. This section provides:

> **(25)** (a) "Insurance" includes any of the following:
>
> 1. Risk distributing arrangements providing for compensation of damages or loss through the provision of services or benefits in kind rather than indemnity in money.
>
> 2. Contracts of guaranty or suretyship entered into by the guarantor or surety as a business and not as merely incidental to a business transaction.
>
> 3. Plans established and operated under ss. 185.981 to 185.985.
>
> (b) "Insurance" does not include a continuing care contract, as defined in s. 647.01(2).

This is not a definition of insurance. As Wis. Stat. § 600.02(2) plainly provides, "[s]tatements that a term 'includes' or 'excludes' something else are not definitions." In its decision, OCI did not use § 600.03(25) as a definition of insurance, but simply pointed out that the definition it did use was consistent with this section: the legislature's inclusion of "risk distributing arrange-

ments providing for compensation of damages or loss through the provision of services or benefits in kind rather than indemnity in money" indicates that such arrangements providing compensation through money are assumed to be "insurance."

¶ 32. As we have stated above, "insurance" is not defined in the statute, but the supreme court has determined that it has a common meaning, *Hillegass*, 176 Wis. 2d at 81, and that is the definition OCI used. We conclude that WIS. STAT. § 600.03(25) is not unconstitutionally vague as applied to NMA, nor is the use of the term "insurance" in the other applicable sections of WIS. STAT. chs. 600 and 601.

¶ 33. NMA's argument based on overbreadth is also without merit. The overbreadth doctrine applies when the language of a statute, given its normal meaning, is so broad that the sanctions of the statute may apply to conduct which the state is not entitled to regulate, such as First Amendment activity. *State v. Tronca*, 84 Wis. 2d 68, 89, 267 N.W.2d 216 (1978). In such situations, a party may challenge the statute based on its hypothetical application to others. *Id.* NMA is not challenging OCI's application of the term "insurance" as hypothetically violating the First Amendment rights of others, but as actually violating its own First Amendment rights. NMA claims that the purpose of the PTT program is to promote the "idea" that recipients of traffic tickets should contest them in court, rather than "fold their hands when the prosecutor ups the ante." However, OCI's regulation of the PTT program as insurance does not restrict NMA's right to advocate that idea. We conclude that the definition of insurance

applied by OCI does not implicate NMA's First-Amendment rights and that the doctrine of overbreadth has no application.

¶ 34. Finally, NMA's claim of a violation of the equal protection clause fails because we have already concluded that there is a rational basis for exempting certain prepaid legal services plans from all or some regulation, while not doing so for the PTT program. When, as here, a fundamental right or suspect class is not implicated, there is no denial of equal protection when a difference in treatment is justified by a rational basis. *Eternalist Found., Inc. v. City of Platteville*, 225 Wis. 2d 759, 780, 593 N.W.2d 84 (Ct. App. 1999).

*By the Court.*—Order affirmed.