JK Harris Financial Recovery Systems, LLC,
Petitioner-Appellant,†

v.

Department of Financial Institutions
and Division of Banking,
Respondents-Respondents.

Court of Appeals

*No. 2005AP631. Submitted on briefs October 11, 2005.
—Decided May 4, 2006.*

2006 WI App 107

(Also reported in 718 N.W.2d 739.)

† Petition to review denied 9-21-06.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Kenneth R. Nowakowski* and *Lisa M. Arent* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Charlotte Gibson*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J. JK Harris Financial Recovery Systems, LLC, appeals a circuit court order that affirmed an order of the Administrator of the Division of Banking. The order requires JK Harris to cease certain business activities in Wisconsin because it is not licensed as an "adjustment service company" under WIS. STAT. § 218.02(1)(a) (2003–04).[1] JK Harris contends that it is not an adjustment service company because it does not receive money from debtors to distribute to creditors, and it thus maintains that it need not be licensed under the cited statute. We accord the Division's interpretation of the statute great weight deference and conclude its determination that JK Harris is an adjustment service company is reasonable. Accordingly, we affirm the appealed order.

## BACKGROUND

¶ 2. WISCONSIN STAT. § 218.02 directs the Division of Banking, which is part of the Wisconsin Department of Financial Institutions, to license and regulate "adjustment service companies," which are defined as follows:

> "Adjustment service company," hereinafter called company, shall mean a corporation, limited liability company, association, partnership or individual engaged as principal in *the business of prorating the income of a debtor to the debtor's creditor or creditors,* or of assuming the obligations of any debtor by purchasing the accounts the debtor may have with the debtor's several creditors, *in return for which the principal receives a service charge or other consideration.*

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

Section 218.02(1)(a) (emphasis added). The present dispute is over whether JK Harris's business activities in Wisconsin come within this definition.

¶ 3. According to the factual findings in the order under review, the Division's interest in JK Harris's Wisconsin business activities began when it received numerous complaints in 2003 and 2004 regarding JK Harris's solicitations mailed to Wisconsin residents. The letters were prominently marked "URGENT MESSAGE" and "FINAL NOTICE" in large or bold type, and they warned the recipient that a lawsuit had been filed or a judgment entered against the individual. The letters stated that, "if this is a debt you owe, we can help you" to "[s]ettle/eliminate all other troubling debt matters."

¶ 4. The Division accepted JK Harris's description of its services to Wisconsin residents as consisting of the following:

a. It contacts creditors and negotiates a reduction or extended payment on behalf of the debtor for the debtor's outstanding debt with that creditor.

b. It works with the debtor directly to set up a self-established budget and financial plan to assist the debtor in managing his or her finances, including making payments to creditors who have reduced their indebtedness or extended the time for payments.

c. In consideration of these services JK [Harris] receives a flat fee from the debtor.

¶ 5. After investigating the complaints it had received, the Division notified JK Harris that it was operating as an unlicensed "adjustment service company" contrary to Wis. Stat. § 218.02 and informed the company that it must cease conducting such business in Wisconsin. JK Harris agreed to cease its direct mail

solicitations to Wisconsin residents while it applied for a license. The Division reviewed JK Harris's application and notified the company of deficiencies in its application.[2]

¶ 6. The Division then issued an order directing JK Harris to cease doing business in Wisconsin as an adjustment service company, and JK Harris requested an administrative review of the order. The Division Administrator conducted the review, agreed with the Division's determination that JK Harris was operating as an unlicensed adjustment service company and issued a final Order to Cease and Desist. In addition to ordering JK Harris to "not conduct or attempt to conduct adjustment service company business with Wisconsin residents," the order directs the company to "refund any and all fees collected from Wisconsin residents." JK Harris petitioned for judicial review of the Division's order and the circuit court affirmed it.

## ANALYSIS

¶ 7. JK Harris maintains that it is not an adjustment service company because it does not "prorat[e] the income of a debtor to the debtor's creditor or creditors" as set forth in Wis. Stat. § 218.02(1)(a).[3] It notes that the Division found that JK Harris receives no payments from debtors to divide and distribute to creditors, and

[2] Whether the Division's action, or lack thereof, on JK Harris's license application was proper is not before us in this appeal.

[3] There appears to be no dispute that JK Harris's business practices do *not* come within the second category of activities that would render it an adjustment service company under the statute, "assuming the obligations of any debtor by purchasing the accounts the debtor may have with the debtor's several creditors." *See* Wis. Stat. § 218.02(1)(a).

that its only activities are negotiations with creditors to obtain debt reductions or extensions, and working with debtors to establish budgets and payment plans regarding the renegotiated debts. JK Harris contends that the term "prorating," as used in § 218.02(1)(a), necessarily requires that, to be an adjustment service company, an entity must receive payments from debtors that it then divides and distributes to creditors. Thus, this appeal turns on the Division's interpretation of § 218.02(1)(a), and more specifically, on the meaning of the term "prorating" as used in that paragraph.

¶ 8. The interpretation of a statute is a question of law that we typically decide de novo. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997). Although JK Harris devotes a considerable portion of its opening brief to challenging the circuit court's reasoning in affirming the Division's order, it acknowledges in its reply brief that our review is of the agency's decision and order, not the circuit court's. *See Barnes v. DNR*, 178 Wis. 2d 290, 302, 506 N.W.2d 155 (Ct. App. 1993). Because an agency's interpretation of a statute is before us, we must decide whether to accord a measure of deference to the Division's interpretation, and if so, how much. The levels of deference we may accord to an agency's statutory interpretation are great weight, due weight or none at all. *Hutson v. State Pers. Comm'n*, 2003 WI 97, ¶ 31, 263 Wis. 2d 612, 665 N.W.2d 212; *Jicha v. DILHR*, 169 Wis. 2d 284, 290, 485 N.W.2d 256 (1992). The level we choose will generally depend upon the extent to which the " 'administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute.' " *Jicha*, 169 Wis. 2d at 290–91 (citation omitted).

759

¶ 9. The Division argues we should accord its interpretation great weight deference. Great weight deference applies when the following four requirements are met:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute.

*Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995). Great weight deference is also appropriate when a legal question is interwoven with fact, value, or policy determinations that the agency routinely makes. *Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267 (1991); *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 12–13, 357 N.W.2d 534 (1984). Under the great weight standard, if the agency's interpretation is reasonable (that is, it is not contrary to the clear meaning of the statute), it will be upheld, even if the court finds another interpretation more reasonable. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 287, 548 N.W.2d 57 (1996).

¶ 10. Not surprisingly, JK Harris contends we should grant no deference to the Division's interpretation of Wis. Stat. § 218.02(1)(a) and, instead, proceed to interpret the statute de novo. A reviewing court will proceed in that fashion "when the issue before the agency is clearly one of first impression, or when an agency's position on an issue has been so inconsistent so as to provide no real guidance." *Id.* at 285 (citations

omitted). According to JK Harris, the facts of this case present an issue of first impression,[4] the Division has no special expertise to resolve this purely legal question, and its interpretation of § 218.02(1)(a) in this case contradicts its own regulations addressing adjustment service companies. JK Harris also asserts that the resolution of the statutory question is in actuality a determination of the scope of the Division's authority or jurisdiction, a question that is typically decided de novo by a reviewing court. *See Loomis v. Personnel Comm'n,* 179 Wis. 2d 25, 30, 505 N.W.2d 462 (Ct. App. 1993).

¶ 11. We reject JK Harris's contention that we should grant no deference whatsoever to the Division's interpretation of Wis. Stat. § 218.02(1)(a). The Division has licensed and regulated adjustment service companies since Wis. Stat. § 218.02 was enacted in 1935. *See* 1935 Wis. Laws, ch. 515. This case thus involves the Division's interpretation of a statute that it has long administered, and it is not necessary for the Division to point to a specific ruling on the same or nearly identical facts in order for us to defer in some measure to its determination that JK Harris is an adjustment service company as defined in § 218.02(1)(a). *See Barron Elec. Coop. v. PSC,* 212 Wis. 2d 752, 764, 569 N.W.2d 726 (Ct. App. 1997) ("The test is not . . . whether the commission has ruled on the precise—or even substantially similar

---

[4] JK Harris argues that this case involves an issue of first impression in part because there are no appellate precedents interpreting the statute. However, the level of deference we accord an agency's interpretation does not depend on whether we have had a prior opportunity to interpret and apply the statute but whether the agency has had that opportunity. *See Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 245, 493 N.W.2d 68 (1992) (De novo review "is applied when the case is clearly one of first impression *for the agency*" (emphasis added).).

—facts in prior cases"; the "key" is "the agency's experience in administering the particular statutory scheme," which "must necessarily derive from consideration of a variety of factual situations and circumstances.").

¶ 12. We similarly reject JK Harris's attempt to cast the statutory interpretation question in this dispute as one of agency jurisdiction. The question before us is not whether the Division has the authority to regulate adjustment service companies—it plainly does. Rather, the question is whether JK Harris is an adjustment service company subject to licensing and regulation under WIS. STAT. § 218.02. The case is thus analogous to *National Motorists Ass'n v. Office of the Comm'r of Ins.*, 2002 WI App 308, 259 Wis. 2d 240, 655 N.W.2d 179, where we addressed whether the Office of Commissioner of Insurance (OCI) had correctly concluded a particular program offered by an organization to its members constituted "insurance" under the statutes, and that the organization was "doing an insurance business." *Id.*, ¶ 10. We accorded OCI's interpretation of the applicable statutes great weight deference, noting that the agency had been administering the statutes since at least 1933; it employed its expertise in making its determinations; and its interpretation provided uniformity and consistency in the application of those statutes. *Id.*, ¶ 12. The Division and its interpretation of § 218.02(1)(a) possess these same attributes.

¶ 13. We also concluded in *National Motorists* that "what constitutes insurance and doing an insurance business is intertwined with value and policy judgments inherent in OCI's statutory decision-making function," and that these determinations were "[i]ndeed . . . at the core of the authority that the legislature has given OCI." *Id.*, ¶ 12. These same observations apply to the question of "what constitutes an adjust-

ment service company" and to the legislature's delegation of regulatory authority over adjustment service company business practices to the Division.

██

¶ 14. Regulatory agencies, like OCI and the Division, routinely make decisions concerning what activities lie within and without the reach of the statutes they administer. Subjecting each such decision to de novo redetermination on judicial review would result in courts supplanting the agencies as the de facto regulatory bodies, which is contrary to the express intent of the legislature, and, hence, to the doctrine of separation of powers. The legislature has directed the Division to "investigate, ascertain and determine whether this chapter ... [is] being violated." WIS. STAT. § 218.02(9)(c). The Division has done precisely that in this case—it has investigated JK Harris's business practices and determined that the company's activities come within the reach of § 218.02.

¶ 15. We conclude the Division's determination that JK Harris is an adjustment service company is entitled to great weight deference from this court. Accordingly, we will affirm the Division's interpretation of WIS. STAT. § 218.02(1)(a) if it is reasonable, even if we might conclude that some other reading of the statute is more reasonable. *See National Motorists*, 259 Wis. 2d 240, ¶ 13. Moreover, under the great weight deference standard of review, the burden falls on JK Harris to convince us that the Division's interpretation of WIS. STAT. § 218.02(1)(a) is unreasonable. *Id.*

¶ 16. As we have described, the dispute in this case centers on the meaning of the word "prorating," which is not defined in the statute. We concur with the parties that, because no statutory definition is supplied, it is appropriate to consult a "recognized" dictionary for

a definition. *See State v. Polashek*, 2002 WI 74, ¶¶ 19–21, 253 Wis. 2d 527, 646 N.W.2d 330 (consulting BLACK'S LAW DICTIONARY, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY and OXFORD ENGLISH DICTIONARY). In his order, the Division Administrator accepted a dictionary definition proffered by JK Harris that "prorate" means "to divide, distribute, or assess proportionately."[5] The administrator then explained why he concluded JK Harris's activities came within that definition:

> This definition can be reasonably read to mean that taken separately or in combination with each other, three activities are considered to be prorating. The activities are i) to divide proportionately, ii) to distribute proportionately or iii) to assess proportionately.
>
> The division correctly argues that the element of receiving and disbursing funds, or taking the physical possession of funds does not have to be present for prorating to occur. When JKH[arris] negotiates a reduction or extended payment on behalf of the debtor for the debtor's outstanding debt with that creditor, it is in fact dividing the debtor's income proportionately and is engaged in the activity of prorating the debtor's income, and as such is an entity subject to the requirements of [WIS. STAT. § ]218.02.

¶ 17. Although, under the great weight deference standard of review, the Division is not obligated to "justify its interpretation," *National Motorists*, 259 Wis. 2d 240, ¶ 13, we find the administrator's explanation

---

[5] In its appellate appendix, JK Harris provides an excerpt from BLACK'S LAW DICTIONARY 1450 (3d ed. 1933), defining "prorate" as follows: "To divide, share, or distribute proportionally; to assess or apportion pro rata." The BLACK'S definition has not changed appreciatively since that time. *See* BLACK'S LAW DICTIONARY 1257 (8th ed. 2004) ("To divide, assess, or distribute proportionately <prorate taxes between the buyer and the seller>").

reasonable. The legislature chose to employ the term "prorating," which, as JK Harris's proffered dictionary definition establishes, is a broader term than "distributing." That is, under the definition, one who prorates amounts of money may do so by distributing money proportionately, but the act of prorating may be accomplished in other ways (i.e., by dividing or assessing proportionately). We thus turn to JK Harris's specific arguments as to why we must conclude that the Division's interpretation is unreasonable.

¶ 18. JK Harris contends that the word "prorating," as used in the statute, requires that an adjustment service company receive funds from the debtor which it then "distributes proportionately" to creditors. JK Harris eliminates the other definitional possibilities by creating the following template of the statutory language: "the business of [ ] the income of a debtor *to* the debtor's creditor or creditors." It then inserts each of the three definitional alternatives (dividing, distributing, assessing) into the bracketed blank to replace the statutory term "prorating," and asserts that only "distributing" makes grammatical sense of the balance of the phrase because of the legislature's choice of the preposition "to." In other words, in JK Harris's view, the legislature's intended meaning of "prorating" can only mean "distributing" because "dividing income *to* creditors" and "assessing income *to* creditors" are at best awkward grammatically, while "distributing income *to* creditors" is a correct grammatical formulation.

¶ 19. Because there is no dispute that it does not physically receive a debtor's income and distribute it to creditors, JK Harris contends that it is not an "adjustment service company," but a mere advisor or counselor. It posits that the Division's interpretation leads to the unreasonable result that others who simply "communi-

cate with" debtors, and with creditors on the debtor's behalf, such as "attorneys, accountants, [and] mortgage brokers" would require licensure under Wis. Stat. § 218.02(1)(a). JK Harris insists that interpreting the term "prorating" to mean "communicating" is contrary to the term's plain meaning and to the legislature's clear intent that a license is required only for acts of proration, not for the mere giving of advice. Finally, JK Harris contends that the Division's own rules implementing § 218.02 show that the receipt and disbursement of debtor funds is necessary for an entity to be deemed an adjustment service company.[6]

¶ 20. JK Harris has not persuaded us that the Division's interpretation is unreasonable. Its grammatical-context argument misses the mark. We, of course, accept JK Harris's premise that we must examine the meaning of statutory language, not in isolation, but within its statutory context. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. We will not, however, summarily reject common and accepted meanings of a statutory term simply because they do not mesh nicely with a preposition found later in a statutory phrase. The legislature could have chosen in Wis. Stat. § 218.02(1)(a) to say "distributing proportionately," the meaning JK Harris advocates, instead of "prorating,"

---

[6] *See, e.g.,* Wis. Admin. Code §§ DFI-Bkg 73.01(1)(a) (June 2004) ("The maximum monthly fee charged the debtor shall not exceed 10% of the amount of money paid to the licensee to be distributed to a creditor or creditors . . . ."); DFI-Bkg 73.03(3) (June 2004)("A licensee shall not commingle payments received from debtors with the licensee's own property or funds . . . ."); DFI-Bkg 73.03(4)–(6) (requiring periodic reports to debtor of receipts, disbursements to creditors and fees).

but it chose the latter term and thereby placed a broader range of activities within the requirement for licensure.

██

¶ 21. We conclude that a more helpful contextual clue as to the legislature's intent than its choice of prepositions is found in WIS. STAT. § 218.02(7). The legislature there directs that the Division shall have the "duty" and the "power" to "prevent evasions of this section" and to "protect debtors from oppressive or deceptive practices of licensees." A narrowed interpretation of the term "prorating" in § 218.02(1)(a) would be inconsistent with these legislatively expressed goals. In short, the Division's interpretation of § 218.02(1)(a) is not unreasonable when the statute is read "in light of its textually manifest scope, context, [and] purpose." *See Kalal*, ¶ 49 n.8.

¶ 22. We also reject JK Harris's argument that simply giving advice or recommendations as to the proration of a debtor's income to a creditor or creditors constitutes only "communicating," which cannot be deemed "prorating" under the statute. It is not unreasonable for the Division to conclude that the purpose and nature of a company's communications with debtors and creditors may cause those communications to be "prorating" within the meaning of WIS. STAT. § 218.02(1)(a). The Division found, and JK Harris acknowledges, that, in return for a flat fee from a debtor, it negotiates with creditors to obtain reductions or extended payments on behalf of the debtor, and it then "works with the debtor" to set up a "self-established" budget and financial plan that includes "making payments to creditors who have reduced their indebtedness or extended the time for payments." It seems clear that the subject, purpose and result of JK Harris's commu-

nications with debtors and creditors is the apportioning ("dividing proportionately") of the debtor's income to (or among) his or her creditors. Put another way, the division of the debtor's income proportionately to his or her creditor or creditors would not occur absent JK Harris's involvement.

¶ 23. As for JK Harris's assertion that the Division's interpretation will bring attorneys and other service providers within the reach of WIS. STAT. § 218.02, we note first that the other professions JK Harris specifically points to are already subject to licensing and regulatory oversight of dealings with clients or customers.[7] Moreover, as the Division notes, JK Harris's proffered limitation of § 218.02 to those who actually handle and distribute client funds would not exclude attorneys, who often do precisely that. Should the Division some day travel down JK Harris's posited slippery slope by attempting to require other regulated professionals and service providers to be licensed under § 218.02, a court may then have to decide whether it may do so despite the legislature's (or supreme court's) creation of distinct regulatory schemes for those occupations. That day has not arrived with the facts before us, however.

¶ 24. Finally, we acknowledge that many of the regulations in WIS. ADMIN. CODE ch. DFI-Bkg 73 pertain to adjustment service companies that do receive and disburse a debtor's funds. As the Division points out, however, under its regulations, an adjustment service company need not handle client funds in order to charge allowable fees for setting up a debtor's budget or

---

[7] *See, e.g.,* SCR chs. 11, 20, 21, 22, 30, 40 (attorneys); WIS. STAT. ch. 442 (accountants); WIS. STAT. §§ 224.71–224.82 (mortgage brokers).

to accept "voluntary fees or contributions" from creditors. *See* § DFI-Bkg 73.01(1)(b) and (2). Moreover, simply because the Division's existing rules regulate certain practices adjustment service companies may engage in, that does not mean an entity whose business practices vary from those to which the existing rules apply cannot be deemed to come within the reach of WIS. STAT. § 218.02. It simply means that the Division may at some point find it necessary or advisable to adopt additional regulations that address business practices that, although they differ from those the Division has previously addressed in its rules, nonetheless constitute those of an adjustment service company.

¶ 25. In sum, JK Harris has not met its burden to persuade us that the Division's interpretation of WIS. STAT. § 218.02(1)(a) is unreasonable.

## CONCLUSION

¶ 26. Because the Division's order rests on its reasonable interpretation of WIS. STAT. § 218.02(1)(a), we affirm the order of the circuit court.

*By the Court.*—Order affirmed.