MORGAN DREXEN, INC., Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF FINANCIAL INSTITUTIONS, DIVISION OF BANKING, Respondent-Respondent,

Tiffany Stockinger LUTHER, Intervenor.†

Court of Appeals

*No. 2014AP1268. Submitted on briefs December 18, 2014. —Decided February 25, 2015.*

## 2015 WI App 27

(Also reported in 862 N.W.2d 329.)

† Petition for Review filed.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Thomas J. Nichols* of *Meissner Tierney Fisher & Nichols S.C.*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Charlotte Gibson*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J.   Since 2007, Morgan Drexen, Inc., has provided debt settlement services in Wisconsin via a program that counsels debtors to stop paying creditors and channel their available funds into accounts controlled by Morgan Drexen. Morgan Drexen pays itself from these accounts and, once the accounts have accumulated sufficient funds, approaches creditors and solicits settlements on behalf of the debtors. By January 2012, this business model had allowed Morgan Drexen to amass more than $4.2 million in fees while paying less than $4 million in settlements to creditors.

¶ 2.   The Wisconsin Department of Financial Institutions' Division of Banking (Division) filed a complaint and notice of hearing against Morgan Drexen in October 2011 alleging violations of WIS. STAT. § 218.02(2)(a)1. (2013–14)[1] and WIS. ADMIN. CODE § DFI-Bkg 73.01 (Mar. 2014). Following a hearing, the hearing examiner ordered Morgan Drexen to disgorge itself of these fees and pay a $1.89 million forfeiture as

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

it had been operating as an unlicensed "adjustment service company." The circuit court affirmed this order.

¶ 3. Morgan Drexen appeals, arguing that the hearing examiner erred in defining what qualifies as an adjustment service company under Wis. Stat. § 218.02(1)(a) and challenging the disgorgement order. Our decision is dictated by the highly deferential standard that we grant such agency decisions. We affirm as Morgan Drexen has not shown that the hearing examiner's interpretation of § 218.02(1)(a) was unreasonable or that the disgorgement constituted an erroneous exercise of discretion.

## STANDARD OF REVIEW

¶ 4. We review the decision of the hearing examiner and not of the circuit court. *Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶ 15, 293 Wis. 2d 1, 717 N.W.2d 166. We give great weight deference to the hearing examiner's determination of what constitutes an "adjustment service company" under Wis. Stat. § 218.02(1)(a). *See JK Harris Fin. Recovery Sys. , LLC v. DFI*, 2006 WI App 107, ¶ 15, 293 Wis. 2d 753, 718 N.W.2d 739.

¶ 5. In employing great weight deference, we will reverse the hearing examiner's interpretation of the statute only if Morgan Drexen shows that the interpretation is unreasonable. *See DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 33, 299 Wis. 2d 561, 729 N.W.2d 396. An interpretation "is unreasonable . . . if it directly contravenes the statute or the federal or state constitution, if it is clearly contrary to the legislative intent, history, or purpose of the statute,

or if it is without a rational basis." *Racine Harley-Davidson , Inc. v. Division of Hearings & Appeals*, 2006 WI 86, ¶ 17, 292 Wis. 2d 549, 717 N.W.2d 184. We will affirm the decision if the hearing examiner's interpretation of WIS. STAT. § 218.02(1)(a) is not unreasonable and his factual findings are supported by substantial evidence. *Hilton*, 293 Wis. 2d 1, ¶ 17.

¶ 6.    Morgan Drexen's challenge to the disgorgement order implicates a discretionary decision under WIS. STAT. § 220.04(9)(d). In reviewing an exercise of discretion, we may reverse only if the hearing examiner failed to exercise his discretion or if he exercised his discretion in violation of the law or agency policy or practice. *See* WIS. STAT. § 227.57(8). We will affirm the decision if the record shows that the hearing examiner considered the facts of the case and reached a reasonable conclusion consistent with applicable law. *Galang v. Medical Examining Bd.*, 168 Wis. 2d 695, 700, 484 N.W.2d 375 (Ct. App. 1992).

## DISCUSSION

¶ 7.    WISCONSIN STAT. § 218.02(1)(a) defines an "adjustment service company" as

> a corporation, limited liability company, association, partnership or individual engaged as principal in the business of prorating the income of a debtor to the debtor's creditor or creditors, or of assuming the obligations of any debtor by purchasing the accounts the debtor may have with the debtor's several creditors, in return for which the principal receives a service charge or other consideration.

Morgan Drexen asserts that the hearing examiner's interpretation of § 218.02(1)(a) is wrong in two re-

spects: (1) it misinterprets the meaning of "prorating" by equating that term with negotiating and (2) it removes the requirement that the company be "engaged as principal" from the statute. Applying its own interpretation of the statute to its business activities, Morgan Drexen argues that the facts before the hearing examiner do not support a determination that it is an adjustment service company subject to regulation by the Division. We disagree as Morgan Drexen has not met its burden to show that the hearing examiner's interpretation of § 218.02(1)(a) is unreasonable and there was substantial evidence that Morgan Drexen's activities fall within that interpretation.

¶ 8. We acknowledge that WIS. STAT. § 218.02(1)(a), which has remained virtually unchanged since its enactment in 1935, *see* 1935 Wis. Laws, ch. 515, is not a model of clarity. We reject, however, Morgan Drexen's attempt to capitalize on the language of what it derides as an "arcane" statute to argue for a meaning that would limit its application to only two types of Depression-era business practices. A broad interpretation of the statute is in keeping with the statutory intent expressed in § 218.02(7), in which the legislature granted the Division the power to issue orders to "protect debtors from oppressive or deceptive practices" and to "prevent evasions of this section." *JK Harris*, 293 Wis. 2d 753, ¶ 21.

*"Prorating the Income of a Debtor to the Debtor's Creditor or Creditors"*

¶ 9. Morgan Drexen argues that the hearing examiner's interpretation unreasonably expands the definition of "prorating" to encapsulate "everyone in

the business of advocating on behalf of debtors to modify, reduce or extinguish an alleged debt." As an alternative, Morgan Drexen contends that the term "prorating" as employed in Wis. Stat. § 218.02(1)(a) requires some sort of proportional distribution, division, or allocation of a debtor's income to his or her creditors at the same time employing "a 'formula' to arrive at a quantity." Morgan Drexen is wrong.

¶ 10.  Morgan Drexen's argument relies on a limited reading of *JK Harris* that ignores context, utilizing those parts of the decision that support its argument and disregarding those that do not. To clear up any misunderstanding, we briefly recite the relevant facts from *JK Harris* here. *JK Harris* involved a business that broadly described its own activities as:  (1) "contact[ing] creditors and negotiat[ing] a reduction or extended payment on behalf of the debtor for the debtor's outstanding debt with that creditor" and (2) "work[ing] with the debtor directly to set up a self-established budget and financial plan to assist the debtor in managing his or her finances, including making payments to creditors who have reduced their indebtedness or extended the time for payments." *JK Harris*, 293 Wis. 2d 753, ¶ 4. The Division determined that JK Harris was operating as an unlicensed adjustment service company and ordered it to cease and desist conducting such business in Wisconsin and to refund all fees collected from Wisconsin residents. *Id.*, ¶¶ 5–6. JK Harris petitioned for judicial review, arguing that it did not engage in "prorating the income of a debtor to the debtor's creditor or creditors." *Id.*, ¶¶ 6–7.

¶ 11.  Contrary to Morgan Drexen's assertion, our decision in *JK Harris* does not define "prorating" to

require the settlement of all debts at once or "apportioning payments among all creditors using a formula." No such analysis exists in *JK Harris*, in which we expressly rejected a narrow definition of "prorating" as inconsistent with the goals of the statutory scheme. *Id.*, ¶¶ 20–21. Instead, we affirmed the determination that prorating occurs when one "negotiates a reduction or extended payment on behalf of the debtor for the debtor's outstanding debt with that creditor." *Id.*, ¶¶ 16–17. That is exactly what the evidence in this case shows that Morgan Drexen does. As in *JK Harris*, we find that the hearing examiner's interpretation of the statute is not unreasonable, *id.*, ¶ 21, and affirm its conclusion that Morgan Drexen is in the business of prorating per Wis. Stat. § 218.02(1)(a).

## *"Engaged as Principal"*

■

¶ 12.   Morgan Drexen next argues that the hearing examiner's interpretation of Wis. Stat. § 218.02(1)(a) is unreasonable because it does not require that Morgan Drexen "own" the debt that it is in the business of settling. Morgan Drexen argues that is what it means for a company to be "engaged as principal" under the statute and that the hearing examiner erred in finding that the requirement does not apply to companies such as Morgan Drexen. We disagree.

¶ 13.   As is relevant to this issue, in order to be an adjustment service company, Wis. Stat. § 218.02(1)(a) requires that an entity first be "a corporation, limited liability company, association, partnership or individual engaged as principal." The hearing examiner interpreted the reference to "engaged as principal" as

solely modifying the word "individual." The hearing examiner relied on principles of statutory interpretation and reasoned that the requirement that the entity be "engaged as principal" made sense only when read this way. This is because the debtor would be considered to be the "principal" in any relationship with an adjustment service company and a "corporation, limited liability company, association, [or] partnership" would always be considered a "principal" in relationship with its employees.

¶ 14. Thus, the phrase distinguishes an "individual" employed by an adjustment service company from an "individual engaged as principal," i.e., sole proprietor, to settle debts on behalf of a debtor. This interpretation, as the Division states, "simply limits the scope of which individuals must be separately licensed under the statute; it has nothing to say about corporations like Morgan Drexen." The hearing examiner's interpretation is not unreasonable.

*Disgorgement of Fees*

■

¶ 15. The hearing examiner ordered Morgan Drexen to remit $4,253,081.93 "as restitution for fees illegally charged Wisconsin debtors." Morgan Drexen jumps on the hearing examiner's use of the word "restitution" to argue that such an award should amount to the net loss experienced by debtors by taking into account the value of Morgan Drexen's services, *see* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 49 (2011), and that it was a mistake of law for the hearing examiner to base a restitution amount on the total fees collected by Morgan Drexen. We again disagree with Morgan Drexen. The hearing

examiner had the discretion under WIS. STAT. § 220.04(9)(d) to "correct the conditions resulting from the violation" of WIS. STAT. § 218.02(2)(a)1., i.e., Morgan Drexen's unlicensed operation as an adjustment service company. A condition resulting from Morgan Drexen's violation was that Wisconsin debtors paid fees that Morgan Drexen was not legally entitled to collect. *See, e.g., del Junco v. Conover,* 682 F.2d 1338, 1343–44 (9th Cir. 1982) (order requiring reimbursement of collection expenses and attorney fees was proper interpretation of law authorizing "affirmative action to correct conditions resulting" from violations of banking laws).

¶ 16. Morgan Drexen was alleged to have received $8,072,442.04 from Wisconsin debtors, of which $4,253,081.93 went to its fees. Morgan Drexen did not contest the fee amount prior to the hearing, at the hearing, or in posthearing briefing.[2] An order that Morgan Drexen disgorge itself of $4,253,081.93 in fees therefore was a reasonable conclusion consistent with the statute and supported by the facts of record. *See Galang,* 168 Wis. 2d at 700. Further, a cease and desist order that includes remittance of all fees collected from Wisconsin consumers by an unlicensed adjustment service company is consistent with agency practice. *See* WIS. STAT. § 227.57(8); *see also JK Harris,* 293 Wis. 2d 753, ¶ 6.

_____

[2] The only evidentiary dispute raised by Morgan Drexen was through its chief executive officer, Walter Ledda, who "caution[ed]" that the Division's figure could include "bankruptcy fees" that were not part of its debt settlement work. The hearing examiner found that Morgan Drexen was not credible in its representations about its fees and relationship with local counsel. The weight and credibility of the evidence is a decision we leave to the hearing examiner. *Ide v. LIRC,* 224 Wis. 2d 159, 165, 589 N.W.2d 363 (1999).

## CONCLUSION

¶ 17. Morgan Drexen has not shown that the hearing examiner's interpretation and application of WIS. STAT. § 218.02(1)(a) to its business activities was unreasonable or unsupported by substantial evidence or that his discretion in ordering that Morgan Drexen disgorge itself of fees unlawfully collected from Wisconsin debtors was erroneously exercised. We affirm the circuit court.

*By the Court.*—Order affirmed.