SIMS, Appellant, v. MANSON, Commissioner of Insurance, Respondent.

*September 4—September 29, 1964.*

The cause was submitted for the appellant on the brief of *Francis J. Skiba* of Milwaukee, and for the respondent on the brief of *George Thompson,* attorney general, and *A. J. Feifarek,* assistant attorney general.

GORDON, J.

> "Immortal gods, I crave no pelf;
> I pray for no man but myself:
> Grant I may never prove so fond,
> To trust man on his oath or bond."

The reluctance to trust one's fellowman which Shakespeare noted in Timon of Athens (act 1, scene 2) has given rise to the bail-bond business. The magnitude of this industry is well known to trial judges, especially in metropolitan areas where crime and poverty abound.

The regulatory rules adopted by the Commissioner of Insurance are not challenged on the ground that these particular rules are unreasonable; rather the contention is made by the appellant that the commissioner is without any authority to regulate the bail bondsmen. Accordingly, the issue for determination is the scope of the commissioner's powers in relation to the bail-bond occupation; we will not consider the merits of the particular rules which purport to regulate the appellant's vocation.

The appellant correctly contends that the commissioner's powers are entirely statutory. He urges that the regulation of the bail-bond business is not included within the grant of powers afforded to the commissioner.

The stipulation of the parties establishes that the appellant charges a premium to the customer for the bond which is filed with the court by the fidelity company. Can it be said that the bail bondsman, as the agent for the fidelity company, is not engaged in the insurance business but instead is merely collecting a service fee in exchange for the credit which he has with the fidelity company?

Mr. Sims argues that there is a significant difference between the receipt of a fee for services and the sale of insurance. He urges that his services are, at most, only incidental to the making of the indemnification agreement and are therefore excluded by sec. 201.42 (2) (a) 2, Stats.

The Wisconsin statutes do not define the elements of "insurance," but a useful definition is found in *Shakman v. United States Credit System Co.* (1896), 92 Wis. 366, 374, 66 N. W. 528, which describes it as "a contract whereby one party agrees to wholly or partially indemnify another for loss or damage which he may suffer from a specified peril." Another definition of insurance is that contained in *Metropolitan Police Retiring Asso., Inc., v. Tobriner* (C. C. A. D. C. 1962), 306 Fed. (2d) 775, 777:

". . . insurance involves essentially a contractual security against anticipated loss. The risk of loss on the part of the insured is occasioned by some future or contingent event, and is shifted to or assumed by the insurer. There is also a distribution of the risk of loss by the payment of a premium or other assessment into a general fund. This permits the insurer to accept each risk at a small fraction of the possible liability upon it."

For other definitions see Vance, Insurance (hornbook series, 3d ed.), ch. 2, p. 82, sec. 10.

Mr. Sims contracted to indemnify the fidelity company for the loss which the fidelity company would incur in the event the defendant failed to appear. We believe that the failure of the defendant to appear constitutes the peril, or contingent event, so as to come within the definitions of insurance referred to above.

Sec. 209.04 (3) (d), Stats., directs the commissioner to promulgate rules as "to the kind of insurance defined by any subsection of s. 201.04." In sub. (7) of the latter statute, fidelity insurance is listed as one of the types of insurance which the commissioner may regulate. This subsection provides:

"Fidelity Insurance.—Against the loss from the defaults of persons in positions of trust, public or private, and to guarantee the performance of contracts and obligations."

Since the appellant's vocation is to guarantee to the fidelity company that the accused person will meet his obligation of appearing in court, the transaction is within the scope of sec. 201.04 (7), Stats., which permits the regulation of insurance designed "to guarantee the performance of contracts and obligations."

We reject the contention that the bail-bond salesman's services are "incidental" to this contract. We deem them to be integral to the insurance agreement; indeed, the basic thing that the bail bondsman does is to bring the insuring agreement into existence.

The appellant also relies on the fact that a legislative bill (No. 465, S.) which would permit the Insurance Commissioner to regulate bail bondsmen was introduced in the 1963 session of the legislature and was not passed. The failure of such a bill to become enacted is in no way suggestive as to the state of the law in the absence of such legislation.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.