Gail ZIMBRICK, Plaintiff-Respondent,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Defendant-Co-Appellant,

DE PERE FOUNDRY, INC., Defendant-Appellant.

Court of Appeals

*No. 99–1894. Submitted on briefs March 20, 2000.—Decided April 18, 2000.*

2000 WI App 106

(Also reported in 613 N.W.2d 198.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *R. George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay.

On behalf of the defendant-co-appellant, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gary R.* Weidner of *Hanaway, Weidner, Bachhuber, Woodward & Maloney, S.C.*, Green Bay.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. De Pere Foundry, Inc., and the Labor and Industry Review Commission (LIRC or the commission) appeal a circuit court order holding that Gail Zimbrick did not receive adequate notice of a worker's compensation hearing. The court accepted Zimbrick's argument that the notice failed to explain her legal role at that hearing. We reverse the circuit court's order because Zimbrick failed to indicate how she was prejudiced by the inadequacy.

## BACKGROUND

¶ 2. Gail Zimbrick's husband, Clarence, was killed on September 3, 1997, in an industrial accident at De Pere Foundry, Inc. (Foundry). A sand mold collapsed and fell on him as an overhead crane was lifting it. Zimbrick received worker's compensation benefits as a result of her husband's death. If the Foundry was responsible for violating an industrial safety rule, however, her benefits would increase by an additional fifteen percent. *See* WIS. STAT. § 102.57.[1] A safety specialist from the Department of Commerce investigated the incident and made the initial determination that the Foundry was responsible for violating a safety rule and liable accordingly.

---

[1] WISCONSIN STAT. § 102.57 states:

**Violations of safety provisions, penalty.**

If injury is caused by the failure of the employer to comply with any statute or any lawful order of the department, compensation and death benefits provided in this chapter shall be increased 15% but the total increase may not exceed $15,000. Failure of an employer reasonably to enforce compliance by employes with that statute or order of the department constitutes failure by the employer to comply with that statute or order.

All statutory references are to the 1997–98 edition.

¶ 3. On December 4, the Department of Workforce Development (the department) sent a letter to the Foundry, with a copy to Zimbrick, stating the investigation results. The letter also explained that the Foundry had thirty days to dispute the findings, in which case the matter would then be scheduled for a hearing. The Foundry timely disputed the findings and, accordingly, the department set a hearing for April 16, 1998.

¶ 4. On March 17, the department sent Zimbrick a standard blue notice used in worker's compensation cases. The notice was addressed to "CLARENCE ZIM-BRICK (DEC'D) C/O GAIL ZIMBRICK" at Zimbrick's residence. The notice was entitled "NOTICE OF HEARING." The front of the notice informed Zimbrick that the hearing concerned her late husband's accident. It indicated the time and place of the hearing and stated that the issue to be heard involved a "SAFETY VIOLATION 15% INCREASED COMPENSATION." Immediately following this, the notice read: "PLEASE READ THE HEARING INFORMATION ON THE BACK OF THIS NOTICE."[2] The back of the notice stated in pertinent part:

Hearing Information

**Your Responsibilities**

◆ Immediately contact necessary witnesses and arrange to have them attend the hearing.

. . . .

**Postponements**

---

[2] Below the admonition to read the back of the notice appeared "**ADDITIONAL PARTIES WHO RECEIVED THIS NOTICE**," followed by a listing of the Foundry's insurance company, the Foundry and its attorney.

■■■■■■■■■■

■■■■■■■■

◆ This hearing will be held unless you notify the Division within 7 days of this notice in writing with a copy to all other parties.

. . . .

◆ Failure to appear as scheduled may result in a decision by default under Wisconsin Statutes, 102.18 (1) (a).

¶ 5. Zimbrick did not attend the hearing and it proceeded as scheduled with only the Foundry's attorney appearing and three of its employees as witnesses. The administrative law judge (ALJ) accepted two exhibits on the department's behalf: (1) the accident investigation report; and (2) the December 4, 1997, letter addressed to the Foundry and copied to Zimbrick, indicating the department's conclusion that a safety violation had occurred. The ALJ questioned the Foundry's witnesses and developed a substantial record. On April 28, the ALJ issued a decision concluding that the Foundry did not violate any safety regulations.

¶ 6. Zimbrick obtained counsel and sent a letter to the department on May 14, asking the ALJ to vacate the order and hold a new hearing. The letter was accompanied by an affidavit indicating that, although Zimbrick received the notice of hearing, the notice violated due process because she "assumed that since the Department had commenced the action, it would also follow through on putting on proof to support the claim." The ALJ denied Zimbrick's request, characterizing her failure to appear after receiving notice as a tactical error or inadvertence. The ALJ also reasoned that granting her request would be detrimental to the Foundry and contrary to administrative efficiency. Finally, the ALJ concluded that the notice clearly informed Zimbrick that she was responsible for obtaining witnesses, a postponement if necessary and

that if she failed to appear she could be found in default pursuant to statute.

¶ 7. Zimbrick appealed that decision to LIRC, which affirmed. The commission concluded that due process had been observed because the hearing notice clearly informed Zimbrick that she was a party to the action and that it was her responsibility to contact witnesses and arrange to have them attend the hearing. If Zimbrick had any questions, the commission reasoned, she could have contacted the department or arranged to have an attorney prior to the hearing. Her failure to do so until after receiving the ALJ's order was a conscious decision on her part for which the commission would not order a new hearing.

¶ 8. Zimbrick sought judicial review of the department's notice in the circuit court. The circuit court accepted Zimbrick's arguments and reversed the commission's decision, concluding that the notice did not satisfy due process because it never informed Zimbrick that she was a party with the burden of proving her claim. Both the Foundry and LIRC appeal the circuit court's decision.

DISCUSSION

¶ 9. We review the agency's decision not the circuit court's, and our review is limited by statute. *See Wright v. LIRC*, 210 Wis. 2d 289, 292, 565 N.W.2d 221 (Ct. App. 1997) (citation omitted); WIS. STAT. § 102.23.[3] We "shall disregard any irregularity or error of the

_____

[3] Under WIS. STAT. § 102.23(1)(e), we may set aside the commission's decision only if it appears:

1. That the commission acted without or in excess of its powers.

2. That the order or award was procured by fraud.

commission or the department unless it is made to affirmatively appear that [Zimbrick] was damaged thereby." WIS. STAT. § 102.23(2); *see also Weibel v. Clark*, 87 Wis. 2d 696, 704, 275 N.W.2d 686 (1979). Whether the department's notice denied Zimbrick procedural due process involves a question of constitutional fact that we review without deference to the commission. *See Hakes v. LIRC*, 187 Wis. 2d 582, 586, 523 N.W.2d 155 (Ct. App. 1994).

¶ 10. "The fundamental requirements of procedural due process are notice and an opportunity to be heard." *Sweet v. Berge*, 113 Wis. 2d 61, 64, 334 N.W.2d 559 (Ct. App. 1983). As for the adequacy of notice, the notice must be reasonably calculated to inform the person of the pending proceeding and to afford the person an opportunity to object and defend his or her rights. *See Schramek v. Bohren*, 145 Wis. 2d 695, 706, 429 N.W.2d 501 (Ct. App. 1988).

¶ 11. Although the notice was timely and clearly informed Zimbrick of the issue to be heard at the hearing, we agree with the circuit court that the notice was inadequate to the extent it failed to inform Zimbrick that she had effectively become the claimant with the burden of proving the safety violation. WISCONSIN STAT. § 102.17 allows "any party of interest" to initiate the hearing procedure by stating the general nature of any controversy that has arisen.[4] Although the department

---

3. That the findings of fact by the commission do not support the order or award.

We review whether a party in an administrative proceeding has received due process as we would whether the agency acted within its jurisdiction and powers. *See Wright v. LIRC*, 210 Wis. 2d 289, 296, 565 N.W.2d 221 (Ct. App. 1997).

[4] WISCONSIN STAT. § 102.17(1)(a) provides:

properly scheduled a hearing based on the Foundry's request, the department did not send Zimbrick a notice that was specifically tailored to inform her that she, not the department, had the burden of proving a safety violation.

¶ 12. We nevertheless reverse the circuit court's order because we agree with the commission and the Foundry that Zimbrick has not demonstrated prejudice. Our supreme court has stated that even if a notice is inadequate, "[appellants] can only prevail if [they show] that [they have] been prejudiced as a result of such notice." *Weibel*, 87 Wis. 2d at 704. Further, Zimbrick "has the burden of showing [she] has been prejudiced by the department's action." *Id.*

¶ 13. Rather than explaining what evidence or argument she could have offered that the ALJ did not consider, Zimbrick maintains that an inadequate notice constitutes prejudice in itself. She cites *Abercrombie v. Clarke*, 920 F.2d 1351, 1360 (7th Cir. 1990), and *L.G. Balfour Co. v. F.T.C.*, 442 F.2d 1, 19 (7th Cir. 1971), in support of her position. However, these cases do not support the proposition that an inadequate notice requires reversal.

¶ 14. *Abercrombie* involved an administrative decision issued by the Comptroller of Currency imposing monetary penalties against the directors of a bank in Indiana. The directors argued that they were not given adequate notice of the violations they had to

---

Upon the filing with the department by any party in interest of any application in writing stating the general nature of any claim as to which any dispute or controversy may have arisen, it shall mail a copy of such application to all other parties in interest . . . . The department shall cause notice of hearing on the application to be given to each party interested, by service of such notice on the interested party personally or by mailing a copy to the interested party's last-known address at least 10 days before such hearing.

defend against because counsel for the comptroller had misinformed them of the charges at a pretrial conference. Although the Seventh Circuit noted that the comptroller's final charges may have been somewhat inconsistent with counsel's previous indications, the court concluded that there was no evidence that the directors were misled. *See Abercrombie*, 920 F.2d at 1360. "Absent evidence that a party is misled by an administrative complaint, resulting in 'prejudicial error,' we shall not reverse." *Id.* (citing *L.G. Balfour Co.*, 442 F.2d at 19).

¶ 15. In *L.G. Balfour Co.*, the company was charged with unfair trade practices. The Federal Trade Commission held that Balfour had secretly acquired and operated a subsidiary company. There was no allegation in the complaint, however, that Balfour had *secretly* acquired and operated the subsidiary company. Balfour claimed that it was accordingly deprived of full notice of the charges. The Seventh Circuit concluded that this did not amount to a "claim that [Balfour was] misled by the complaint, nor is there any evidence in the record that they could have been so misled." *L.G. Balfour Co.*, 442 F.2d at 19. The court noted that an administrative complaint merely requires that "the one proceeded against be reasonably apprised of the issues in controversy . . . ." *Id.* (citation omitted). Because the notice satisfied those requirements, the court found that there was no prejudicial error. *See id.*

¶ 16. Neither *Abercrombie* nor *L.G. Balfour* are helpful to Zimbrick because neither court set the bar for what constitutes prejudice. Both courts concluded that the appellants were not misled and therefore their inquires ended. Neither case stands for the proposition that any actual inadequacy of notice requires reversal.

¶ 17. Comparatively, here Zimbrick admits that she knew a hearing was scheduled and that the safety issue surrounding her husband's death was the sole subject of that hearing. She does not dispute that the notice clearly informed her that she had the responsibility to present witnesses and could be found in default if she did not appear. She nevertheless contends that the partially inadequate notice was itself prejudicial.

¶ 18. The parties have not cited any case, and this court's independent research has produced none, that directly addresses the exact type of inadequate notice presented here. We consider the issue she raises to be analogous to an applicant who has a right to counsel but the notice insufficiently explains that right. *See, e.g., Kelly v. Heckler,* 761 F.2d 1538 (11th Cir. 1985). In that context, courts have consistently held that reversal on grounds of insufficient notice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.* at 1540.

¶ 19. Here, Zimbrick has completely failed to identify any evidence or argument she could have offered or that the ALJ did not consider. She merely claimed in her affidavit that she believed that safety violations had occurred. She did not make an offer of proof in the circuit court or even develop that argument on appeal. In short, she does not specifically explain or develop the basis for her belief that she could have offered evidence of safety violations.

¶ 20. Moreover, rather than simply granting a default judgment, the ALJ conducted a hearing. He took it upon himself to question witnesses concerning

their testimony, personal knowledge of the accident and safety issues. For example, one of the witnesses, Robert Antolec, had initially reported to the department investigator that molds drop every three weeks or so. In his report, the investigator indicated that the frequency of molds dropping was a significant factor in his initial conclusion that the Foundry violated a safety regulation. At the hearing, however, Anotlec explained that molds drop less frequently. The ALJ confronted Antolec with his inconsistent statements and pressed for an explanation for the change in his answer. Antolec explained his lack of personal knowledge at the time and that his initial statement was only an educated guess. Since giving his initial statement, Antolec stated that he had obtained more accurate information. ■

¶ 21. We conclude that there has been no showing of prejudice resulting from the partially inadequate notice. Without that showing we will not upset the department's decision. *See Weibel,* 87 Wis. 2d at 704. Accordingly, the circuit court's order is reversed.

*By the Court.*—Order reversed.