HOMEWARD BOUND SERVICES, INC.,
Petitioner-Appellant,

v.

OFFICE OF THE INSURANCE COMMISSIONER,
Respondent-Respondent,

Court of Appeals

*No. 2005AP1781. Submitted on briefs May 12, 2006.
—Decided September 7, 2006.*

## 2006 WI App 208

(Also reported in 724 N.W.2d 380.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Robert A. Mich, Jr.*, *Kay & Andersen, S.C.*, Madison, and *Stephen M. Hladik, Kerns, Pearlstine, Onorato & Fath, LLP*, Lansdale, PA.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Charlotte Gibson*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Vergeront and Deininger, JJ.

¶ 1. VERGERONT, J. The Office of the Commissioner of Insurance (OCI) determined that the assisted living services contracts sold by Homeward Bound Services, Inc. are insurance within the meaning of Wis. STAT. § 600.03(25)(a)[1] and that Homeward Bound violated Wis. STAT. § 610.11 by engaging in the business of insurance in Wisconsin without a certificate of authority. The order issued by OCI directed Homeward Bound to cease and desist selling the contracts in Wisconsin, to refund premiums, and to pay a forfeiture, along with related requirements. The circuit court affirmed OCI's decision and order, and Homeward Bound appeals. Homeward Bound contends that its assisted living contracts do not constitute insurance under the proper construction and application of the statutes and that OCI is applying a new definition of "insurance," thus engaging in rulemaking without following the requisite procedures. Even if the contracts are insurance, Homeward Bound asserts, the Commissioner does not have the statutory authority to order refunds and the Commissioner violated Homeward Bound's right to due process by imposing a forfeiture without proper notice.

¶ 2. We conclude: (1) OCI's construction and application of the relevant statutes regarding insurance are entitled to great weight deference and are reasonable; (2) OCI did not engage in rulemaking by applying a new definition of "insurance"; (3) the Commissioner has the statutory authority to order refunds; and (4) Homeward Bound's right to notice under the due process clause was not violated. We therefore affirm.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

487

## BACKGROUND

¶ 3. Homeward Bound is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in Pennsylvania. It sells assisted living services contracts, which provide assistance with everyday activities, including eating, bathing, dressing, shopping, laundry, cleaning, and toileting to persons in their homes. After an investigation, OCI ordered Homeward Bound to cease and desist from selling insurance through its assisted living contracts to Wisconsin residents, to refund subscription fees, and to comply with related requests. Because Homeward Bound contested the order, a hearing was held before an administrative law judge (ALJ). The notice of hearing advised Homeward Bound that the hearing would consider whether the order should be "modified, rescinded, or affirmed, or whether another Order should be issued pursuant to s. 601.42(4), WIS. STAT., including possible forfeitures under s. 601.64, WIS. STAT."

¶ 4. The ALJ issued a proposed decision, which concluded that the cease-and-desist order should be upheld. This decision concluded that Homeward Bound violated WIS. STAT. § 610.11[2] by engaging in the "busi-

---

[2] WISCONSIN STAT. § 610.11 provides that "[n]o person may do an insurance business as defined in s. 618.02(2) . . . in this state . . ., except: (1) An insurer authorized to do business in this state, within the limits of its certificate of authority . . . ." A certificate of authority is issued by the commissioner of insurance "if the commissioner is satisfied that [the insurer or plan] has met all requirements of law and that its methods and practices and the character and value of its assets will adequately safeguard the interests of its insureds and the public in this state." WIS. STAT. § 601.04(3).

488

ness of insurance," as defined in WIS. STAT. § 618.02(2),[3] without a certificate of authority and that the contract was an insurance contract within the definition of WIS. STAT. § 600.03(25)(a).[4] The proposed decision contained

[3] WISCONSIN STAT. § 618.02(2) provides:

(2) "Doing an insurance business" includes:

(a) Soliciting, making, or proposing to make an insurance contract;

(b) Taking or receiving an application for insurance;

(c) Collecting or receiving, in full or in part, an insurance premium;

(d) Issuing or delivering an insurance policy except as a messenger not employed by the insurer or by an insurance agent or broker;

(e) Inspecting risks, setting rates, disseminating information or advising on risk management in connection with the solicitation, negotiating, procuring or effectuation of insurance coverage;

(f) Investigating, settling, adjusting or litigating claims;

(g) In any way representing or assisting any person to do an insurance business or to procure insurance; and

(h) Any other act generally regarded as doing an insurance business.

[4] WISCONSIN STAT. § 600.03(25) provides:

(a) "Insurance" includes any of the following:

1. Risk distributing arrangements providing for compensation of damages or loss through the provision of services or benefits in kind rather than indemnity in money.

2. Contracts of guaranty or suretyship entered into by the guarantor or surety as a business and not as merely incidental to a business transaction.

3. Plans established and operated under ss. 185.981 to 185.985.

(b) "Insurance" does not include a continuing care contract, as defined in s. 647.01 (2).

a number of findings of fact, some of which we set forth in the following four paragraphs; we relate others later in the opinion.

¶ 5. Homeward Bound's contract guarantees that, in return for the price paid by the subscriber, it will provide the number of days and hours of the offered services selected by the subscriber after the waiting period has expired. During the waiting period, the subscriber may request only services that are not related to a pre-existing condition. The waiting period is either six or twelve months in duration and is determined by a subscriber's age and health condition. Homeward Bound imposes limitations on the number of days and hours available to customers with certain more serious health conditions. When a subscriber requests services, Homeward Bound arranges for home healthcare agencies to provide services to subscribers.

¶ 6. From October 1998 through September 2002, Homeward Bound sold its assisted living service contract to a total of 323 Wisconsin subscribers; of those twenty-nine requested and received services under their contracts. The average age of Wisconsin subscribers was 79.88 years. The average annual fee paid by Wisconsin subscribers was approximately $2100, with a variation from $700 to over $6000, depending on a subscriber's age, health condition, and level of benefits purchased.

¶ 7. At the time of sale, Homeward Bound gives a brochure to customers that states "Homeward Bound Services was formed with the express purpose of providing seniors an alternative to nursing home recovery"; it also lists reasons "Why You Should be at Home after an episode of illness, injury or accident." Another brochure given customers at time of sale states: "At Homeward Bound Services, Inc. we know how important it is for our customers to be at home while

recuperating. We hope our customers will be able to avoid the fear and panic associated with nursing home confinement." Both brochures state: "This is not Insurance."

¶ 8. Homeward Bound contracts were sold in Wisconsin through Wisconsin insurance agents who received a commission on each sale. At the time of application, the agent completes a form, initially titled "Underwriting Assessment," in which the agent answers certain questions and signs this statement:

> I have carefully interviewed the applicant named below to report to Homeward Bound Services, Inc. their health conditions for proper classification of the risk and to accurately describe the physical appearance of the applicant with regard to mobility, vision, frailty or other impairments not specifically noted on the application. I understand it is my responsibility to properly *underwrite* the applicant.

(Emphasis added by ALJ.) At some point, Homeward Bound retitled this form to "Customer Assessment," but the contents, including the agent statement, remained largely unchanged. Homeward Bound later retitled the form again to "Customer Evaluation" and changed the word "underwrite" to "classify."

¶ 9. Homeward Bound objected to the proposed decision and requested a hearing under Wis. Stat. § 227.46(2)[5] before the Commissioner, at which the

---

[5] WISCONSIN STAT. § 227.46(2) provides:

(2) Except as provided in sub. (2m) and s. 227.47 (2), in any contested case which is a class 2 or class 3 proceeding, where a majority of the officials of the agency who are to render the final decision are not present for the hearing, the hearing examiner presiding at the hearing shall prepare a proposed decision, including findings of fact, conclusions of law, order and opinion, in a form that may be adopted as the final decision in the case. The proposed decision shall be a part of the record and shall be served by the

Commissioner heard additional arguments from both parties. The Commissioner issued a decision, which is the final decision of OCI. This decision adopted the ALJ's proposed findings of fact, conclusions of law and proposed order, making additional findings of fact and conclusions of law and adding to the proposed order that Homeward Bound must pay a forfeiture of $161,500.[6] In the opinion part of the decision, the Commissioner considered and rejected each of Homeward Bound's challenges to the ALJ's decision and explained the reasons for adding a forfeiture to the order.

¶ 10. Homeward Bound filed a petition for judicial review of OCI's decision in the circuit court, and the circuit court affirmed.

## DISCUSSION

¶ 11. On appeal, Homeward Bound makes four primary arguments: (1) OCI erred in its construction and application of the term "insurance," and its assisted living contract does not constitute insurance under a proper construction; (2) OCI applied a new definition of insurance, which constitutes rulemaking without following the required procedures; (3) even if the contracts Homeward Bound sells are insurance, the Com-

---

agency on all parties. Each party adversely affected by the proposed decision shall be given an opportunity to file objections to the proposed decision, briefly stating the reasons and authorities for each objection, and to argue with respect to them before the officials who are to participate in the decision. The agency may direct whether such argument shall be written or oral. If an agency's decision varies in any respect from the decision of the hearing examiner, the agency's decision shall include an explanation of the basis for each variance.

[6] The two additional conclusions of law relate to the statutory authority for the order of refunds and the forfeiture.

missioner does not have the authority to order refunds; and (4) the Commissioner imposed a forfeiture without giving it adequate notice, thus violating its right to due process.

## I. Construction and Application of "Insurance"

¶ 12. In her opinion, the ALJ used two sources for the definition of "insurance." The ALJ considered that under Wis. Stat. § 600.03(25)(a)1. "insurance" includes "[r]isk distributing arrangements providing for compensation of damages or loss through the provision of services or benefits in kind rather than indemnity in money." She also considered the commonly understood meaning of insurance from the case law that we identified in *National Motorists Association v. OCI*, 2002 WI App 308, ¶ 14, 259 Wis. 2d 240, 655 N.W.2d 179 (citations omitted): "a contract that shifts the risk of loss in exchange for premiums."[7] The ALJ concluded that the Homeward Bound contract was both a risk-distributing arrangement as described in § 600.03(25)(a)1. and met the definition from *National Motorists* because it was a

> promise to pay for/provide certain assisted living services by Homeward Bound in the event the customer

---

[7] In *National Motorists Association v. OCI*, 2002 WI App 308, ¶ 14, 259 Wis. 2d 240, 655 N.W.2d 179, we recognized that there was not a general definition of "insurance" in the statutes, and the program at issue there did not fit into one of the categories listed in Wis. Stat. § 600.03(25)(a). We therefore turned to the case law, in particular, *Hillegass v. Landwehr*, 176 Wis. 2d 76, 81, 499 N.W.2d 652 (1993). In *Hillegass*, after reciting other definitions, the court stated that the "critical element . . . is a contractual shifting of risk in exchange for premiums." We concluded in *National Motorists* that the definition OCI applied in that case was consistent with this commonly understood meaning. 259 Wis. 2d 240, ¶ 14.

develops a need for such services in the future in return for premiums paid by the customer. Under this contract, [Homeward Bound] agrees to accept future liability for homecare services when it accepts the premium payment . . . . The specified loss in this case may technically be the cost of future needed homecare services . . . [or] could also be described as the consumer's loss of independence either through their own physical deterioration or a change in living circumstances.

¶ 13. In the final decision, the Commissioner addressed and rejected Homeward Bound's argument that the ALJ used a new definition of "insurance." The Commissioner agreed with the ALJ's analysis that Homeward Bound's contract was a risk-sharing plan as described in WIS. STAT. § 600.03(25)(a)1. and was consistent with the definition of "insurance" it used in *National Motorists*.

¶ 14. Homeward Bound argues that OCI's construction of "insurance" is incorrect because it ignores established definitions of "insurance" in the case law that require a specified loss that is fortuitous or contingent. According to Homeward Bound, its contract is not insurance under this established definition because the contract provides for services on demand and does not require a specified loss that is fortuitous or contingent.

A. Standard of Review

¶ 15. The proper construction of a statute and its application to a given set of facts present questions of law, which we generally review de novo. *See National Motorists*, 259 Wis. 2d 240, ¶ 10. However, we may give varying degrees of deference to an agency's interpreta-

tion of a statute that it is charged with administering.[8] *Id.* In *National Motorists*, we concluded it was appropriate to give great weight deference to OCI's interpretation and application of the statutes involved in determining whether a particular program was insurance and whether an entity was doing an insurance business in Wisconsin. *Id.* When we apply great weight deference, we affirm the agency's construction and application of the statutes if they are reasonable, even if an alternative reading of the statutes is more reasonable. *Id.*, ¶ 13.

¶ 16. OCI contends that the degree of deference we applied in *National Motorists* is appropriate in reviewing OCI's decision on the same issue in this case. Homeward Bound disagrees because, it asserts, OCI ignored established law and imposed a new definition of "insurance." We understand Homeward Bound to be arguing that one of the criteria for applying great weight deference is not met in this case—that the agency's interpretation of the statute is one of long standing.[9] However, as we explained in *National Motorists*, "[i]t is not necessary that the agency has previously ruled on the application of the statute to a factual

---

[8] On an appeal from a circuit court decision reviewing the decision of an administrative agency, we review the decision of the agency, not that of the circuit court. *Target Stores v. LIRC*, 217 Wis. 2d 1, 11, 576 N.W.2d 545 (Ct. App. 1998).

[9] Great weight deference is proper when:

(1) the agency is charged with administration of the statute being interpreted; (2) the agency's interpretation is one of long standing; (3) the agency employed its expertise or specialized knowledge in arriving at its interpretation; and (4) its interpretation will provide uniformity and consistency in the application of the statute.

*National Motorists*, 259 Wis. 2d 240, ¶ 11 (citations omitted).

situation similar to the one presented if the agency has extensive experience in administering the statutory scheme in a variety of situations." *Id.*, ¶ 11. We concluded in *National Motorists* that OCI has extensive experience in administering and enforcing WIS. STAT. chs. 600 to 655 and has been determining what constitutes insurance and the business of insurance since at least 1933. *Id.*, ¶ 12. Homeward Bound's challenge to the correctness of OCI's construction and application of the statutes in this case does not provide a basis for applying a less deferential standard of review. We conclude that great weight deference is appropriate. Homeward Bound therefore has the burden of showing that OCI's construction and application of the statutes is unreasonable. *Id.*, ¶ 13.

B. Homeward Bound's Challenge to OCI's Construction of "Insurance"

■

¶ 17. We consider first Homeward Bound's contention that OCI used a construction of the term "insurance" that does not require a contingent or fortuitous loss. We disagree. Both the statutory standard in WIS. STAT. § 600.03(25)(a)1. and the common meaning of "insurance" that we referred to in *National Motorists* use the terms "risk" and "loss": *"[r]isk distributing arrangements* providing for compensation of damages or *loss* . . .," § 600.03(25)(a)1., and "contract that shifts the *risk of loss* in exchange for premiums." 259 Wis. 2d 240, ¶ 14 (emphasis added).[10] "Risk," in this context,

---

[10] It appears from the proposed decision of the ALJ, the Commissioner's decision, and that of the circuit court that the following paragraph and footnote in *National Motorists* has engendered some confusion:

conveys the concept that there is an uncertainty about the loss occurring: this uncertainty is substantially the same concept that is conveyed with the words "contingent" or "fortuitous."[11]

¶ 18. If Homeward Bound means to argue that the contractual relationship is not insurance unless the

> [National Motorists] argues that under one author's definition of insurance, [its] program is clearly not insurance because 'there is no meaningful sharing of risk for fortuitous losses' over a large number of persons.[FN4] However, the use of other definitions of 'insurance' in other contexts does not show that the definition used by OCI is unreasonable.

> ---

> [FN4] [National Motorists] cites to Spencer Kimball, *Insurance and Public Policy* (University of Wisconsin Press, 1960):

> For purposes of this book, insurance may be defined as any formally organized scheme for the distribution of an adventitious economic loss over a large number of persons subject to the risk of such loss, with a view to replacing the uncertain risk of loss by a predictable cost.

*National Motorists*, 259 Wis. 2d 240, ¶ 17 n.4. We did not intend by these statements to distinguish "fortuity" from "risk" and indicate that fortuity is not a requirement for insurance. The significance of this alternative definition proposed by National Motorists, in the context of that case, had to do with the number of persons over whom the risk was shared: the proposed definition used "a large number," whereas there were only twenty-eight subscribers to National Motorist's program. *Id.*, ¶ 6. The point we intended to make was that OCI's decision—that the program was insurance even though there was only a small number of subscribers—was not unreasonable simply because the author of the cited treatise defined "insurance" to include schemes where loss was distributed over a large number of persons.

[11] MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997) defines "risk" as "possibility of loss or injury" (at 1011); "contingent" as "likely but not certain to happen: Possible" (at 250); and "fortuitous" as "occurring by chance" (at 460).

contract specifically identifies the future event insured against, the cases cited do not impose such a requirement. In *Shakman v. United States Credit System Company*, 92 Wis. 366, 374, 66 N.W. 528 (1896), the issue was whether a contract that provided that one party would indemnify another for insolvency was a contract of insurance even though insolvency was not the usual type of peril insured against. The court concluded the contact was an insurance contract. *Id.* In this context, the court's statement that an "insurance contract is a contract whereby one party agrees to wholly or partly indemnify another for loss or damage which he may suffer from a specified peril" is not a holding that the specific peril must be identified in the contract. *Id. Sims v. Manson*, 25 Wis. 2d 110, 114, 130 N.W.2d 200 (1964), which Homeward Bound also cites, quotes the above statement from *Shakman* and also refers to other definitions of insurance. The court in *Sims* concluded that a contract to indemnify the loss that a fidelity company would incur if a defendant failed to appear in court was a contract of insurance under various definitions because the defendant's failure to appear at trial "constitutes the peril, or contingent event." *Id.* The *Sims* court did not impose any requirements on what the contingent event must be or how it must be expressed in the contract.

¶ 19. In this case, in deciding whether Homeward Bound's contract was insurance, OCI considered not only the current version of the contract, but also other evidence, including the prior version of the contract, the manner in which Homeward Bound marketed and sold the contracts, and the perceptions of the subscribers as well as their use, or lack of use, of services under the contract. No case law prohibits this, and, indeed, it is the approach approved by the supreme court in *State*

498

*ex rel. Martin v. Dane County Mutual Benefit Association*, 247 Wis. 220, 19 N.W.2d 303 (1945). There the court stated that, in determining what is insurance for purposes of OCI's regulation, "all the facts" must be examined in order to "determine the real nature and substance of the activities carried on by [the] defendant to determine whether the business for which it was formed and actually carried on constitutes a form of insurance." *Id.* at 231. OCI used this approach in analyzing whether the substance of Homeward Bound's product was insurance, and it was certainly reasonable to do so.

> C. Homeward Bound's Challenge to OCI's Application of "Insurance"

¶ 20. Fundamentally, Homeward Bound's argument seems to be that the evidence does not support OCI's determination that, under its contract, Homeward Bound assumed in exchange for premiums the risk that, due to events that might occur because of the subscriber's physical deterioration or changes in their living situation, the customers would need services to stay in their homes. According to Homeward Bound, no risk of loss was transferred to it because subscribers did not have to wait for any future event to receive services, but could begin to receive them, after the waiting period, as soon as they requested them and for any reason. In addressing this argument, we accept OCI's findings of fact because Homeward Bound does not present a developed argument that OCI's findings of fact are not supported by substantial evidence. *See Krahenbuhl v. Wis. Dentistry Examining Bd.*, 2006 WI App 73, ¶ 19, 292 Wis. 2d 154, 713 N.W.2d 152 (agency

findings of fact will be affirmed if they are supported by substantial evidence).[12]

¶ 21. In its decision, OCI considered it significant that Homeward Bound's first contract used in Wisconsin stated that it would provide the specified services "[if the] subscriber is under a 'Plan of Care' for an illness or injury, received medical care, advice or treatment by a doctor, hospital or therapist for any medical condition diagnosed or first treated after the application date." The quoted language was deleted and replaced with this: "If the customer desires, H.B.S. will assist the customer, or customer's doctor, or caregiver, in creating a 'Plan of Service.' " OCI rejected Homeward Bound's contention that removing the "Plan of Care" requirement from the later contract meant that the contract was not insurance. OCI determined that the other arrangements and practices remained unchanged, and these showed the services are provided only upon an event causing the need for services.

---

[12] We agree with OCI that Homeward Bound in its main appellate brief does not present a developed argument that particular findings of fact in OCI's decision are not supported by substantial evidence. Instead, Homeward Bound bases its recitation of facts on its own view of the evidence. In its reply brief, Homeward Bound asserts that it has "[a]t every stage of these proceedings, both before OCI and in the circuit court . . . challenged OCI's presentation of the facts and offered its own independent statement of facts with supporting citations to the record." Homeward Bound's reply also disagrees with some statements in OCI's appellate brief, apparently viewing these disagreements as a challenge to OCI's factual findings. This reply is not a developed argument that particular factual findings in OCI's decision are not supported by substantial evidence; even if it were, we would not consider it because it is not raised in Homeward Bound's main brief. *See Hackl v. Hackl*, 231 Wis. 2d 43, 56, 604 N.W.2d 579 (Ct. App. 1999) (we do not as a general rule address issues raised for the first time in a reply brief).

¶ 22. The facts supporting OCI's determination include the following. The package of services offered is one that a subscriber needs only if he or she becomes unable to care for himself or herself without assistance. The contracts allow services during the waiting period only if the subscriber develops a new condition. The number of days and hours per day of services available under the contract are capped for "each separate incident." Homeward Bound targets its marketing to persons seeking long-term care insurance. The marketing materials describe the product as a nursing home alternative and convey the idea that the product is intended to allow the subscribers to remain at home instead of going to a nursing home for a particular condition. Nowhere in the materials that Homeward Bound provides applicants or in the application is there a statement that a subscriber may use the services for any reason, without regard to a need for the services, when the waiting period expires. Nor do the education materials provided the agents who sell the contracts contain such a statement; these materials describe the program as one to provide services to assist in recovering from "injury and/or illness" and "maintain . . . independence."[13] The application does not ask when the subscriber wants the services to start.

---

[13] The manual provided to sales agents and insurance agents to educate them about the Homeward Bound product states:

> The **Assisted Living Services Agreement** is a **PRE-NEED** service contract. It is designed to provide service for any new illness or injury occurring after the date of application that is unrelated to a prior condition. After the waiting period services are provided during episodes of illness or injury even if related to a prior condition.
>
> THOSE INDIVIDUALS WITH AN IMMEDIATE NEED FOR HELP AT HOME ARE ENCOURAGED TO SEEK OTHER OPTIONS . . . .

501

¶ 23. In addition, OCI considered the testimony of subscribers,[14] the evidence that few subscribers actually requested services, and the reasons they did so. OCI viewed this as evidence that the subscribers believed they were paying premiums so that they would have services if they became incapacitated or lost the assistance of someone who was presently living with them.

¶ 24. Homeward Bound argues that OCI is treating growing older as a fortuitous loss and this is unreasonable because growing older is a certainty. This is not an accurate characterization of OCI's decision. While growing older is certain to occur until one dies, there is no certainty that a subscriber will need services to stay at home before death occurs or before a serious illness or injury requires care in a hospital and nursing home that cannot be provided at home even with assistance. The point at which a subscriber will have an illness or injury or experience the deteriorating effects of aging that make services necessary in order to stay at home is also uncertain, as is when and if other events will occur, such as the loss of a caretaking spouse, that will make services necessary. Finally, the extent of

**The Homeward Bound Services Assisted Living Service Agreement helps:** to promote recovery, to assist customers as they recover from injury and/or illness, the customer maintain his or her independence.

[14] Four Wisconsin residents who purchased the Homeward Bound contract testified that they purchased the contract through an insurance agent after they had applied for and been denied long-term care insurance because of a medical or health condition. They purchased the contract because they wanted to have the home assistance services the contract provided in case their medical condition or health worsened to the point they could no longer perform these tasks themselves. None of these four ever requested services from Homeward Bound because they never got to the point where they needed the services.

502

services needed, if and when any of these events occurs, is also uncertain. These uncertainties create the risk of loss that Homeward Bound is assuming for the premiums paid, and the ALJ's proposed decision, confirmed and made final by the Commissioner, recognizes this.

■

¶ 25. We are satisfied that, based on the facts as found by OCI, it reasonably determined that Homeward Bound was agreeing to provide and was providing the services if and when an illness or event occurred to the subscribers that caused them to need the services to remain in their home. OCI reasonably concluded that this constituted a shift to Homeward Bound of the risk of loss for a premium and, thus, its product was insurance.

II. Rulemaking

¶ 26. Homeward Bound argues that OCI has utilized a new definition of "insurance" in this case because it has ignored the requirement in WIS. STAT. § 600.03(25)(a) that there be "damage or loss." According to Homeward Bound, this constitutes a "rule" under WIS. STAT. § 227.01(13),[15] and OCI must therefore follow the procedures required by statute for promulgating new rules, *see* WIS. STAT. §§ 227.10(1) and 227.16–21. OCI's failure to do so, Homeward Bound asserts, makes the new rule invalid.

---

[15] WISCONSIN STAT. § 227.01(13) provides:

(13) "Rule" means a regulation, standard, statement of policy or general order of general application which has the effect of law and which is issued by an agency to implement, interpret or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency . . . .

¶ 27. Whether an agency's action constitutes a "rule" under WIS. STAT. § 227.01(13) presents a question of law, which we review de novo. *See County of Dane v. Winsand*, 2004 WI App 86, ¶ 5, 271 Wis. 2d 786, 679 N.W.2d 885.

¶ 28. We conclude that OCI did not employ a new definition of "insurance." As we have explained in the preceding section, OCI did not ignore the loss element of WIS. STAT. § 600.03(25)(a). It applied the statute to the facts it found and its conclusion that there was a loss as required by this subsection is a reasonable one. OCI did not make a new rule.

III. Authority to Order Refunds

¶ 29. Homeward Bound argued before the Commissioner that he does not have the authority to order it to refund premiums to the subscribers because WIS. STAT. § 601.41(4) (2001–02) gives the Commissioner the authority to grant only injunctive relief.[16] This statute provides: "The commissioner shall issue such prohibitory, mandatory and other orders as are necessary to secure compliance with the law." The Commissioner

---

[16] The proposed decision ordered Homeward Bound to refund to all Wisconsin residents who so requested, upon notice, and to all Wisconsin residents with lapsed or cancelled contracts, their payments minus amounts Homeward Bound paid for services provided, plus interest at 5% from the date of sale. If Homeward Bound did not fully comply with these and related provisions within 120 days after the order, Homeward Bound was ordered to pay by that date to OCI the full amount it had received from all Wisconsin subscribers, less refunds paid and amounts paid for services, but not less than $650,000.

concluded he does have the statutory authority to order refunds and the final order contained the proposed order on refunds.

¶ 30. Homeward Bound argues on appeal that prohibitory and mandatory relief are forms of injunctive relief, and WIS. STAT. § 601.41(4) (2001–02) plainly permits only injunctive orders that compel compliance with the law. According to Homeward Bound, refunds are not injunctive relief but are damages.

¶ 31. Because this issue of statutory construction involves the authority of an agency, we decide it de novo, without deferring to the agency. *See Wis. Citizens Concerned for Cranes and Doves v. DNR*, 2004 WI 40, ¶ 13, 270 Wis. 2d 318, 677 N.W.2d 612.

¶ 32. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, we conclude the statutory language has a plain meaning, then we apply the statute according to that plain meaning. *Id.*, ¶ 47.

¶ 33. WISCONSIN STAT. § 601.41(4) (2001–02) gives the Commissioner the authority to issue not only "pro-

hibitory" and "mandatory" orders, but also "other orders as are necessary to secure compliance with the law." There is no limitation on the nature of the "other orders" except that they be "necessary to secure compliance with the law." Thus, the pertinent question is whether the order of refunds is "necessary to secure compliance with the law," not whether they are categorized as "injunctive relief" or "damages," which are terms not used in the statute.

¶ 34. In answering this question, we consider several closely related statutes. *See Kalal*, 271 Wis. 2d 633, ¶ 46. WISCONSIN STAT. § 601.01(2) (2001–02) provides that one of the purposes of WIS. STAT. chs. 600–655 is to "ensure that policyholders, claimants, and insurers are treated fairly and equitably." WISCONSIN STAT. § 601.41(2) (2001–02) provides that the "commissioner shall have all powers specifically granted to the commissioner, or reasonably implied in order to enable the commissioner to perform the duties imposed by sub. (1)"; that subsection provides that "[t]he commissioner shall administer and enforce chs. 600 to 655 . . . ." Section 601.41(1). These statutes, when read together with § 601.41(4) (2001–02), show the legislature intended to give the Commissioner broad authority to enforce chs. 600–655 to achieve the purposes of these statutes, one of which is to ensure that policy holders are treated fairly.

¶ 35. We conclude WIS. STAT. § 601.41(4) (2001–02) plainly permitted the order of refunds in this case. The Commissioner determined that Homeward Bound violated the law by selling its contracts without a certificate of authority. As long as Homeward Bound retains money that it illegally received from the subscribers, over and above the cost of the services pro-

vided, Homeward Bound is continuing to benefit from its violation of the laws the Commissioner is charged with enforcing; and as long as Homeward Bound retains that money, the subscribers remain illegally deprived of their money. In these circumstances, the power to issue orders to "secure compliance with the law," § 601.41(4) (2001–02), "reasonably implie[s]" the power to refund to the subscribers the payments that Homeward Bound received from them in violation of the law, minus amounts paid by Homeward Bound for services.[17] *See* § 601.41(2) (2001–02).

¶ 36. Homeward Bound argues that a recent amendment to WIS. STAT. § 601.41(4), enacted by 2003 Wis. Act 261, §§ 4–6 supports its construction of this statute. The amendment, with the new language italicized, provides:

> **(4)** ENFORCEMENT PROCEEDINGS. (a) The commissioner shall issue such prohibitory, mandatory, and other orders as are necessary to secure compliance with the

---

[17] Homeward Bound makes a one-sentence argument that "OCI did not offer proof why a refund of every Wisconsin customer, which includes commissions paid to sales agents, is 'necessary to secure compliance with the law.'" If Homeward Bound means that the refund order issued in this case was not reasonable based on the evidence, it does not develop that argument with any detail. Similarly, its two-sentence argument that the $650,000 figure, *see supra* note 16, "is grossly inflated" is supported only by reference to one exhibit in a footnote. Finally, Homeward Bound argues in a footnote that the Commissioner's decision to "impose monetary damages would also be the promulgation of a new regulation," and refers us back to the preceding section. We do not address these arguments because they are not sufficiently developed. *See State v. Petit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to review issues that are inadequately briefed).

507

law. *An order requiring remedial measures or restitution may include any of the following:*

> *1. Remedial measures or restitution under s. 628.347 (5).*

> *2. Remedial measures or restitution to enforce s. 611.72 or ch. 617, including seizure or sequestering of voting securities of an insurer owned directly or indirectly by a person who has acquired or who is proposing to acquire voting securities in violation of s. 611.72 or ch. 617.*

According to Homeward Bound, this new language shows that remedial measures and restitution were not previously included in the Commissioner's powers under § 601.41(4) (2001–02).

¶ 37. Assuming without deciding that it is appropriate to consider this subsequent amendment as an indication of the legislature's intent in enacting the current version of WIS. STAT. § 601.41(4), we disagree with Homeward Bound's view of its significance. The language "[a]n order requiring remedial measures or restitution may include any of the following . . ." plainly indicates that the preceding phrase, "other orders as are necessary to secure compliance with the law," already includes remedial measures and restitution: the legislature is simply emphasizing remedies under specific statutory provisions. The language of the amendment does not reasonably convey that, prior to the amendment, the Commissioner did not have the authority to order remedial measures and restitution. The plain meaning is just the opposite.

IV. Notice of Forfeiture

¶ 38. Homeward Bound contends that the forfeiture imposed by the Commissioner was imposed with-

out notice to Homeward Bound, thus violating its right to due process. It asserts that it "was never on notice to defend itself [under Wis. Stat. § 601.43(3)] at the hearing before the ALJ," that OCI "never presented any evidence under this section," and the first suggestion it had that a forfeiture might be imposed was when the Commissioner questioned its counsel about it at the oral argument.[18]

¶ 39. The procedural guarantees of the due process clause require that a party proceeded against by an administrative agency have notice before the hearing of the alleged violations that will be at issue at the hearing. *See Bracegirdle v. State Dep't of Regulation and Licensing,* 159 Wis. 2d 402, 418–20, 464 N.W.2d 111 (Ct. App. 1990). If a party asserts that notice was insufficient, it must demonstrate prejudice caused by the insufficient notice. *Zimbrick v. LIRC,* 2000 WI App 106, ¶ 12, 235 Wis. 2d 132, 613 N.W.2d 198. Whether a notice is sufficient to provide due process presents a question of law, and our review is therefore de novo. *See Oliveira v. City of Milwaukee,* 2001 WI 27, ¶ 3, 242 Wis. 2d 1, 624 N.W.2d 117.

¶ 40. We will assume without deciding that Homeward Bound was entitled to notice from OCI before the ALJ hearing that a forfeiture was a possible outcome if the alleged violations were proved. The June 14, 2002 Notice of Hearing informed Homeward Bound

---

[18] Wisconsin Stat. § 601.64(3)(c) provides that "[w]hoever violates an insurance statute . . . shall forfeit to the state not more than $1,000 for each violation." The Commissioner explained that the forfeiture of $161,500 was arrived at by imposing a $500 forfeiture per subscriber.

that forfeitures were among the possible penalties that could result from the enforcement action. Thus, Homeward Bound was notified at the outset of the proceeding that forfeitures were a possibility.

¶ 41. Homeward Bound appears to suggest that, once the ALJ issued a proposed decision that did not impose a forfeiture, the Commissioner was without the power to do so, but it provides no authority or developed argument to support this proposition. WISCONSIN STAT. ch. 227 plainly authorizes an agency to depart from a hearing examiner's proposed decision as long as the agency adequately explains the departure. *See* WIS. STAT. § 227.46(2); *Heine v. Chiropractic Examining Bd.*, 167 Wis. 2d 187, 192, 481 N.W.2d 638 (Ct. App. 1992). The Commissioner here adequately explained why he was imposing a forfeiture.

¶ 42. Homeward Bound also appears to suggest that, when the Commissioner notified Homeward Bound of the date of the oral argument it requested, the Commissioner was obligated to inform Homeward Bound that a forfeiture might result. Again, Homeward Bound provides no authority or developed argument to support that proposition. As Homeward Bound acknowledges, at the oral argument the Commissioner raised the issue of a forfeiture and asked Homeward Bound's counsel why one should not be imposed. Thus, Homeward Bound had the opportunity to present argument on this issue, and it did. If there was additional evidence that Homeward Bound wanted to present to show why a forfeiture should not be imposed, it could have informed the Commissioner at that point; but it did not. On this appeal, Homeward Bound does not explain what it would have done differently had it received the type of notice it claims it should have received. The only prejudice it refers to is the forfeiture

itself, but that "prejudice" does not flow from any inadequacy in the notice. *See Zimbrick*, 235 Wis. 2d 132, ¶ 12.

¶ 43. We conclude that Homeward Bound has not established either that notice was inadequate to meet the due process standard or that it was prejudiced by any inadequacy of notice.

## CONCLUSION

¶ 44. We conclude that OCI's construction and application of the relevant statutes regarding insurance are entitled to great weight deference and are reasonable, and OCI did not engage in rulemaking by applying a new definition of "insurance." We also conclude the Commissioner has the statutory authority to order refunds in this case, and Homeward Bound's right to notice under the due process clause was not violated. We therefore affirm the circuit court's order, which affirmed OCI's final decision and order and dismissed Homeward Bound's petition for judicial review.

*By the Court.*—Order affirmed.