ZINTER, Justice
(dissenting).
[¶ 24.] I agree with the majority’s conclusion that “[t]he Disbursement Agreement, Loan Agreement, Promissory Note, and Balloon Note [may] be construed as a single contract involving the same transaction.” See supra ¶ 15. But this “contract” contained the terms for: Tri-State Ethanol’s agreement to acquire White Rock; Murphy’s agreement to finance the TriState Ethanol-White Rock transaction; and, Murphy’s agreement with others to distribute the loan proceeds. Therefore, the contract involved independent obligations and rights of multiple parties, and obviously, each party was not subject to each term of each agreement. Under those circumstances, we must examine the language of the forum-selection clauses to see if they bound Kramer in his suit on the Disbursement Agreement. They clearly did not.
[¶ 25.] The majority believes that if the agreements are reviewed “collectively,” Kramer “intended the venue for any suit on the Disbursement Agreement to be ... in ... Illinois.” Id. But there is no forum-selection language in the Disbursement Agreement to support that belief. Further, the majority’s belief is not supported by the plain language of the Loan Agreement and Notes — the only agreements containing forum-selection clauses. The plain language of those agreements reflects that their forum-selection clauses only applied to loan disputes between the borrower (Tri-State Ethanol) and the lender (Murphy). Ultimately, there is no forum-selection term in any part of the “contract” that purports to require forum selection for suits on the Disbursement Agreement, an agreement that required Murphy to distribute loan proceeds to per *818 sons like Kramer who were not parties to the financing agreements.
[¶ 26.] The Court’s analysis fails to acknowledge the cardinal rule that, in determining the meaning of a contract, “effect will be given to the plain meaning of its words.” In re Dissolution of Midnight Star Enters., L.P., 2006 S.D. 98, ¶ 12, 724 N.W.2d 384, 337. Courts look “to the language that the parties used in the contract to determine their intention,” and if the parties’ intention is made clear by the language of the contract “it is the duty of this [C]ourt to declare and enforce it.” See Pauley v. Simonson, 2006 S.D. 73, ¶ 8, 720 N.W.2d 665, 667-68. “We will not create a forced construction or a new contract for the parties when the language is clear and we are able to ascertain the plain and ordinary meaning of the language used.” Cole v. Wellmark of S.D., Inc., 2009 S.D. 108, ¶ 14, 776 N.W.2d 240, 246.
[¶ 27.] The plain language of the Loan Agreement’s recitals reflects that TriState Ethanol, White Rock, and Murphy were the only parties who intended to be bound by the terms of that agreement.[3] Kramer was not a party to, and he had no rights or obligations under, the terms of the Loan Agreement other than to acknowledge the stated value of his interest in the pipeline.[4] Further, even though the Loan Agreement may have been a part of an overall “contract,” the language of the forum-selection clause in the Loan Agreement bound only the “[BJorrower [ (TriState Ethanol) ]” and “Murphy,” the lender. The clause did not purport to bind non-financing parties like Kramer. The clause provided:
[BJorrower [ (Tri-State Ethanol) ] and Murphy agree that this Loan Agreement, the Notes, Mortgage, and Security Agreement shall be governed by the substantive law of the State of Illinois, without regard to principles of conflicts of laws. The Borrower [ (Tri-State Ethanol) ] further agrees that at the sole election of Murphy, the jurisdiction and venue for any suit hereon [ (the Loan Agreement) ] shall be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.
(Emphasis added.) Kramer also could not have been bound to this term because it specifically recited the related agreements to which it applied and the Disbursement Agreement was excluded. Finally, Kramer could not have been bound by this term because it applied only to suits “hereon”; i.e., suits on the Loan Agreement. Kramer’s suit was on the Disbursement Agreement.
[¶ 28.] Similarly, Kramer was not bound by the forum-selection clauses in the Promissory Note and Balloon Note. Kramer was not a signatory to, and he had no rights or obligations under, the notes. *819 Further, even though the notes may have been a part of an overall “contract,” the forum-selection clauses in the notes bound only the borrower, “[t]he undersigned [Tri-State Ethanol].” They did not purport to bind non-financing parties like Kramer. Both clauses provided:
The undersigned [ (Tri-State Ethanol) ] agrees that this Agreement [ (the Promissory Note and the Balloon Note) ] shall be governed by the substantive law of the State of Illinois, without regard to principles of conflicts of laws. The undersigned [ (Tri-State Ethanol) ] further agrees that at the sole election of the holder hereof, the jurisdiction and venue for any suit hereon [ (the notes) ] shall be the Fourteenth (14th) Judicial District in Rock County, Illinois.
(Emphasis added.) Once again, Kramer could not have been bound by this term because it applied only to suits “hereon”; i.e., suits on the notes. Kramer’s suit was on the Disbursement Agreement.
[¶ 29.] In sum, Kramer was not a party to any term requiring forum selection. Even though all of the agreements may be considered to be parts of one contract, the language of the forum-selection clauses in the Loan Agreement and notes plainly (and logically) applied only to the lender (Murphy) and the borrower (Tri-State Ethanol). No language in those forum-selection clauses even suggests that they were intended to apply to suits on a Disbursement Agreement that involved non-financing parties. Further, neither the majority opinion nor Murphy have identified any language in the Disbursement Agreement — the only agreement to which Kramer was a party — that incorporated the forum-selection clauses by reference.[5] Therefore, even if the various agreements are “collectively” construed as one contract, the borrower — lender terms of that contract do not reflect intent to bind Kramer to forum-selection in suits on the Disbursement Agreement. On the contrary, a collective review of all agreements reflects the parties’ intent to exclude forum selection in disputes arising on the Disbursement Agreement. The agreements were negotiated among sophisticated parties who included forum-selection clauses in the notes and Loan Agreement, while simultaneously excluding any forum-selection provision from the Disbursement Agreement, an agreement involving different parties.[6] Because the plain language of the agreements reflects no intent to authorize forum selection in suits brought on the Disbursement Agreement, I respectfully dissent.
[¶ 30.] KONENKAMP, Justice, joins this dissent.

. The Loan Agreement recited:
This Loan Agreement is made and entered into as of the 15th day of October, 2002 by and between Tri-State Ethanol Company, LLC, a South Dakota limited liability company, hereinafter called ("Borrower”), White Rock Pipeline, L.L.C., a South Dakota limited liability company, hereinafter called ("White Rock”) and the William F. Murphy Self-Declaration of Trust and Mike D. Murphy, hereinafter collectively called ("Murphy”).

. There is no dispute that Kramer signed the Loan Agreement in his individual capacity solely for the purpose of "agree[ing] to accept the amounts set forth [in the Loan Agreement], for [his] interest[] in White Rock.” (Emphasis added.) This suit does not involve a dispute over that amount. This is a suit on Murphy’s failure to distribute Kramer’s undisputed portion of the loan proceeds as required by the Disbursement Agreement. Kramer’s agreement to accept the stated amount of his interest in the pipeline is irrelevant to the question whether disputes arising under the Disbursement Agreement were subject to forum selection.

. The majority attempts to infer incorporation by drawing a distinction between the word “agreement” and the word "note” in the notes. See supra ¶ 19. The distinction is artificial. Obviously, a note is an agreement. Further, there is no language in the notes’ forum-selection clauses that even suggests the singular form of the phrase “this agreement” was actually intended to mean the Disbursement Agreement, the Loan Agreement, the Promissory Note, and the Balloon Note.

. The Court downplays the absence of a forum-selection clause in the Disbursement Agreement. The court states that the Disbursement Agreement was "no more than a mechanism for the parties 'to repay their membership interest in White Rock out of the loan payments to the William F. Murphy Self-Declaration of Trust and Mike D. Murphy required by the Balloon Secured Promissory Note.’ ” See supra ¶ 17. Nevertheless, the parties to that "mechanism” are entitled to have their suits on the mechanism resolved in accordance with the intent of the parties as is reflected in the plain language of the parties' agreement.